No. 26,340.

## J. L. SHRIVER, *Appellant*, v. THE FOURTH NATIONAL BANK OF WICHITA, *Appellee*.

### SYLLABUS BY THE COURT.

FRAUD—*Evidence—Presumptions and Burden of Proof.* In an action for damages for deceit, the deceit is not presumed, but must be established by proof.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed July 10, 1926. Affirmed.

*John Madden, John Madden, Jr.,* both of Wichita, and *H. E. Walter,* of Kingman, for the appellant.

*Charles G. Yankey, John L. Gleason,* and *Kenneth K. Cox,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for deceit. The trial court sustained a demurrer to plaintiff's evidence, and he has appealed.

Plaintiff alleged in substance that in February, 1920, the officers of the Ross Brothers Seed Company, a corporation engaged in the seed business at Wichita, began a campaign to sell $50,000 preferred stock of the corporation. A prospectus was prepared describing the stock offered for sale and containing a letter written by one of the officers of the seed company, giving a general history of the seed company, the nature and extent of the business transacted by it and of its past earnings, and a stock salesman was employed to sell the stock. It was alleged that the statements in the prospectus were false in many specific particulars. It was further alleged that the financial statements made by the officers of the seed company for the years 1918 and 1919 were false, in that the assets of the seed company were stated at sums greatly in excess of their value. As to the defendant it was alleged:

"That prior to and at the time of beginning such campaign, the Fourth National Bank of Wichita, Kan., defendant herein, either of their own volition and in keeping with the scheme, or at the instance of the said Jesse D. Wall and others, issued a letter or written instrument wherein and whereby it was stated by the officials of said defendant bank that the Ross Brothers Seed Company had done business with the bank for the past thirty (30) years; that the business of the Ross Brothers Seed Company had at all times

Fraud, 27 C. J. p. 44 n. 57.

been taken care of, and that the same was very satisfactory to said bank; that the Ross Brothers Seed Company's account was one which the said bank very much appreciated, and that the Ross Brothers Seed Company was numbered among its oldest and best accounts. That said bank further represented that for the past thirty (30) years the Ross Brothers Seed Company had been one of the pioneer and leading seed houses of the Southwest, and so far as they knew had always borne an excellent reputation and had the confidence of the community and the Southwest in their business deals."

It is further alleged that the statements that the seed company had been doing business with the bank for thirty years, that their business had at all times been taken care of and was very satisfactory with the bank, were false. It was alleged that the sale of the preferred stock was a scheme to obtain money for the seed company, which was then in failing condition and insolvent, and that the defendant bank knew that the seed company was in failing condition and insolvent; that the seed company was then indebted to the bank in a large sum represented by the notes of the seed company and indemnified by a blanket guarantee, executed as individuals by the officers of the seed company; that the purpose of the sale of the stock was to obtain funds to liquidate the indebtedness of the seed company to the bank and relieve the individual officers of the seed company from their obligation upon their guarantee; that the plaintiff and others who assigned their claims to him, purchased the preferred stock, relying upon the representations made in the prospectus and in the letter from defendant; that the defendant bank received the money from the sale of such preferred stock, knowing it to have been so obtained, and applied it upon the indebtedness of the seed company to the bank, and that the stock was in fact worthless.

The bank alone was made defendant and answered with a general denial, and specifically denied the authority of anyone on behalf of the bank to make for it any of the alleged representations set forth in plaintiff's petition as having been made by defendant. The reply was a general denial.

The evidence disclosed that the plaintiff and others who assigned their claims to him purchased preferred stock from the stock salesman employed by the seed company to sell the same, relying in whole or in part upon the representations contained in the prospectus and in the letter alleged to have been given by the bank. The letter upon which plaintiff seeks to hold the bank was dated February 25, 1920, was written on its stationery, and reads as follows:

"To Whom it May Concern:

"The Ross Brothers Seed Company have done business with this bank for the past thirty years. Their business has always, at all times, been promptly taken care of and very satisfactory to us. It is an account we appreciate very much and we number it among our oldest and best accounts.

"For the past thirty years they have been one of the pioneer and leading seed houses of the Southwest, and so far as we have ever known they have always borne an excellent reputation and have the confidence of the community in the Southwest in their business dealings.

"Trusting this will give you the desired information, I am,

　　　　　　　　Yours most respectfully,

DFC-G.　　　　　　　　　　　DAN F. CALLAHAN, *President.*"

Plaintiff relies upon the principles stated in *Shriver v. National Bank et al.,* 117 Kan. 638, 232 Pac. 1062, and allied cases. The difficulty of applying these principles to the case before us is the lack of proof to establish the alleged deceit. There is no evidence that the statements made in the prospectus were false. There is no evidence that the financial statements of the seed company of 1918 and 1919 were false. The financial statement of December 31, 1919, showed assets of $110,000, including merchandise of the value of more than $84,000. It also showed debts owing on bills payable and on account of about $56,000. It was alleged in the petition that these assets were stated at a figure greatly in excess of their value, but there is an entire lack of evidence to establish that allegation. Neither is there any evidence to show that anyone connected with the defendant bank had anything to do with writing the letter other than Dan Callahan, who signed it. It was not shown that the letter was authorized by the board of directors or any of the other bank officials, nor that it was ever called to the attention of them after it was written, nor that any of them ever knew of its existence. Plaintiff criticizes the language of this letter, and perhaps it is open to some criticism. It was shown that at the time the letter was written the seed company was indebted to the bank $41,200, evidenced by the notes of the seed company, and this indebtedness was guaranteed by an instrument in writing executed personally by the officers of the seed company. It was further shown that on a good many of the days in the two or three months immediately prior to the writing of the letter the account of the seed company at the bank was overdrawn a few hundred dollars.

We see nothing inherently wrong in a seed company's buying seeds in the fall and having on hand in the middle of the winter a large amount of seeds to be sold the next spring or summer, and nothing

inherently wrong in the seed company's borrowing money to enable it to make such purchases, nor in the bank's making loans for such purpose, nor in the bank's taking additional security for such loans in the way of individual indemnity. The small amount of overdraft might very well have indicated a shortage of ready cash needed to transact their business rather than a shortage of assets. It was shown that the money received from the sale of the preferred stock was used, a great deal of it, in paying debts of the seed company to the bank, and it is argued by plaintiff that this shows a ratification by the bank of the statements in the letter written by Mr. Callahan. Certainly the bank could not ratify the statements if it did not know of the letter having been written or used in the sale of the stock, and there is no evidence that it did know. Then there is no representation in the prospectus that the money from the sale of preferred stock was to be used otherwise than in the business of the seed company, and it is not contended that it was represented by the stock salesman or the officers of the company that any other use would be made of it; hence, if the bank really knew that the money to pay its notes was coming from the sale of preferred stock, we are unable to see that this fact indicates any fraud or deceit on the part of the bank.

There is evidence that the bank investigated the affairs of the seed company in May, 1921, and had an auditor audit the books of the seed company to determine its financial status, but this does not tend to show that the seed company was insolvent in February, 1920. It was shown that the seed company went into bankruptcy in September, 1921, and there is evidence that its financial statement of June 30, 1921, was false in that its assets were stated greatly in excess of their value. The trial court did not admit this statement in evidence, and that is one of the errors complained of by plaintiff. There was no error in excluding this statement, for the reason that all the preferred stock was sold within ninety days after February 20, 1920. The allegations of fraud were as to conditions that existed at and prior to the sale of the preferred stock, hence the condition of the company on June 30, 1921, was not germane to the issue raised by the pleadings. But, since plaintiff contends that it should have been admitted, and since it is the only statement of the seed company concerning which there is any evidence of fraud, we note that if that statement had been admitted it shows that the seed company lost more than $60,000 in its business during the year

preceding the making of that statement; hence this statement tends to show the solvency of the company at the time the stock was sold, and that its failure and ultimate bankruptcy were brought about after plaintiff purchased his stock. Plaintiff argues, inferentially, that if there was a false statement made by the company as to its assets on June 30, 1921, that fraud was characteristic of their statements, and hence that the statement of December 31, 1919, was false in the same respect. Obviously that does not necessarily follow. At most it could only be an inference or suspicion; but damages for fraud or deceit are not allowed on suspicion only—they must be established by proof.

There was no error in sustaining the demurrer to plaintiff's evidence, and the judgment of the court below is affirmed.