No. 33,208

Sallie C. Ritchie, *Appellee*, v. The Metropolitan Life Insurance Company, *Appellant*.

(66 P. 2d 622)

Opinion filed April 10, 1937.

*P. E. Nulton* and *R. L. Letton,* both of Pittsburg, for the appellant.
*Simeon Webb* and *C. S. Denison,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to collect the principal sum of a life insurance policy and to set aside a release of liability on the policy executed by the insured and the beneficiary. Judgment was for the plaintiff. Defendant appeals.

The petition, after formal allegations, alleged the issuance of the policy for $1,000 on January 1, 1929; the initial payment of $1.62 when the policy was delivered; that the policy provided for payments of $1.62 on the first of each month thereafter; and that there was an agreement between the beneficiary and insured that she would make the future payments of premiums as they became due; and that insured was to cause no change to be made in the beneficiary during the life of the policy and that the agent of defendant delivered the policy with notice of this agreement.

The petition further alleged that on or about the first of every month thereafter plaintiff made the payments when due until the first day of September, 1933.

The petition further alleged that there was a provision in the policy for a grace period of thirty-one days, as follows:

"A grace period of thirty-one days, without interest charge, will be granted for the payment of every premium after the first, during which grace period the insurance shall continue in force . . ."

The petition then alleged that on September 29, 1933, an agent of defendant with full power to act for defendant came to the house of plaintiff and demanded the payment of the September premium; that plaintiff informed this agent that she would be unable to pay the whole of this premium until the 30th of that month; that this agent promised to return and collect this premium on the 30th of that month; and that contrary to this promise this agent failed to appear on that day, although it had been the custom of defendant prior to September 30, 1933, to send one of its agents to the house of plaintiff to collect her monthly premiums.

The petition further alleged that the last day of grace provided in the policy expired the second day of October, 1933; that on this day plaintiff tendered to this agent at her home the full amount of the premium; that this agent refused to accept this premium at that time and wrongfully stated that the day of grace had expired for the payment of this premium on October 1, 1933, which was Sunday, and that it would be necessary for the insured to pass a satisfactory physical and medical examination before he would be eligible for insurance in defendant company; that plaintiff informed the agent of defendant that she was ready and willing to pay the premium for September and would continue to make the payments on the policy as they became due; that this agent stated to plaintiff that it would be useless for her to undertake to make any further monthly payments on the policy because the defendant would not accept them unless the insured could pass a satisfactory physical examination because the policy had lapsed on October 1, 1933, for failure to make the September payment.

The petition further alleged that on the second Friday in December, 1933, plaintiff called at the district office of defendant and stated that she would make the payments, but was told that defendant would not accept the premiums unless insured could pass a satisfactory physical examination.

The petition further alleged that at each of the times when defendant had stated to plaintiff and insured that insured would have to pass a satisfactory physical examination before he would be eligible for reinsurance, insured was ill with tuberculosis.

The petition then alleged that, on or about January 19, 1934, defendant mailed from New York to insured and plaintiff its check for $1.28, payable to plaintiff and insured; that appearing on the back of this check was the following:

"10 1949

"This check must be endorsed in ink by the payee. If endorsement is made by mark (✕), it must be witnessed by two (2) persons who can write, giving their places of residence in full.

"Release—Endorsement.

"The undersigned acknowledge payment and hereby release and forever discharge the said Metropolitan Life Insurance Company of and from all manner of claims and demands whatsoever arising under or by reason of the numbered policy or policies on the reverse side.                Signatures."

The petition then alleged that at the time of receiving this check and at no time prior thereto did plaintiff or insured know what the law was with reference to whether the last day of grace on the policy had expired on the first day of October, 1933, as claimed by defendant.

The petition further alleged that accompanying this check was a letter addressed to insured and plaintiff; that this letter had been lost or destroyed; that this letter stated in substance that defendant had looked into the insurance laws and been advised with reference to such laws as to the grace period under that policy for September, 1933, and that it was a fact that this grace period had expired on October 1, 1933.

The petition further alleged that neither plaintiff nor insured were familiar with the insurance laws applicable to the construction of the grace period in the policy, and relying on the statements in the letter and believing them to be true, endorsed the check, but laid it aside and did not cash it until the 21st day of April, 1934; that both plaintiff and insured at that time still believed that the representations in the letter were true; and at the time of cashing the check relied upon these representations and believed that the policy had lapsed.

The petition further alleged that these representations with reference to the laws applicable to the grace period were false and known by defendant to be false; that these false representations were made by defendant for the purpose of wrongfully deceiving plaintiff and insured into believing that the grace period had expired on October 1, 1933, and that the policy had lapsed on that day; and that insured and plaintiff, relying upon these representations, were deceived into believing that the policy had lapsed; that on October 20, 1934, insured died, and the policy became due plaintiff in the principal sum of $1,000.

The petition then alleged that during all the time in question defendant maintained at Pittsburg a district office in charge of a district manager and certain assistant district managers.

The petition then alleged that at the time of his death insured had not discovered that the representations made by defendant in its letter were untrue; that plaintiff did not discover until shortly after the death of insured that the representations were untrue and that she had been defrauded thereby.

The petition then alleged a demand for the payment of the policy and a refusal to pay.

The prayer was for judgment canceling the release on the back of the check and for $1,000, with interest, less accrued premiums.

There was a motion to strike certain of these allegations, but since the motion refers to numbered paragraphs and the petition in the abstract does not number the paragraphs, and since defendant does not make a point in its brief of the overruling of this motion, it will not be discussed here.

In the answer of defendant it was first admitted that the policy was issued to insured and that defendant was a corporation. The answer then contained a general denial.

The answer then denied that the policy was in force at the date of the death of insured, but alleged that it had lapsed for nonpayment of the monthly premium due September 1, 1933.

The answer further alleged that at the time the policy lapsed it had an equity or cash-surrender value of $1.28, and that on or about January 19, 1934, defendant issued its check payable to plaintiff and insured in the sum of $1.28; that sometime prior to April 21, 1934, the check was endorsed by them, negotiated by them, and paid by this defendant.

The answer then alleged that on or about April 19, 1934, plaintiff and insured released defendant from all liability under the policy by signing the release, which was the endorsement on the back of the check. This release has already been referred to in this opinion.

The answer further contained a specific denial that defendant or any of its agents made the false representations to insured or plaintiff set out in the petition.

The reply was a general denial.

It will be seen that the issue made up by this pleading was the validity of the release that appeared on the back of the check that was endorsed by plaintiff and insured. The case was submitted to a jury which returned a verdict for plaintiff. Judgment was entered accordingly. This appeal followed.

Defendant states the question as follows:

"Was the invalidity of the release of liability under the policy established by proper and sufficient evidence of actionable fraud?"

The question argued by defendant is divided as follows:

"1. Did the trial court commit reversible error in the admission of certain testimony, to wit:

   (a) Plaintiff's testimony as to her recollection of content of letter from appellant to insured.

   (b) Plaintiff's testimony as to her conversation with insured concerning the cashing of cash-surrender check.

"2. Did the evidence prove actionable fraud—

   (a) Plaintiff's evidence as against defendant's demurrer.

   (b) The evidence of both parties as against defendant's request for an instructed verdict."

The first question argued is that the trial court should have sustained the objection of defendant to the testimony of plaintiff as to her recollection of the content of the letter from defendant to insured. A proper consideration of this question will necessitate an examination of the testimony of plaintiff.

Plaintiff testified about the delivery of the policy and that she had paid the premium each month partly from her own funds. She testified that during that period Mr. Rennick was the agent who called at the house of plaintiff to collect the premiums. She further testified that on September 29, 1933, Mr. Walker and Mr. Whitney, agents of the defendant, called; that she told Mr. Whitney that she did not have all of the premium then but if he would come back the next day she would have it all, and he said all right; that he did not come back the next day; that the 29th day of September was on Friday; that he came back on Monday, October 2; that she told him on that day that she had the $1.62 and he said he could not accept it because the policy had expired; that he stated that he had looked through the laws, and the policy expired October 1, and he would not accept the money; that he said her son would have to sign a health form; that at that time her son, the insured, had been in bed three weeks with bronchial tuberculosis; that Walker was with Whitney; that following this second day of October none of the agents of defendant called on her to collect that premium.

This witness testified further that during the second week in December she went to the office of defendant and offered to pay the premium, but that the clerk refused to accept it unless insured signed a health form; that this clerk promised to send the men out the next Monday, but none came.

The attention of the witness was then called to the draft that has been referred to already in this opinion. She said she received that in January, 1934; that the check was in a letter addressed to her son; that the letter was lost; that she thought she could tell what the letter said. She was then asked to state this. At this point counsel for defendant objected on the ground that the letter itself was the best evidence. Counsel for defendant read to the court in the absence of the jury the deposition of two employees of defendant who identified a carbon copy of a letter sent by defendant to plaintiff and insured under date of March 20, 1934. These two witnesses had testified that the original of the carbon copy which they identified was the letter which accompanied the check about which plaintiff testified. It will be remembered that this check bore the date of January 19, 1934. Counsel then tendered this carbon copy to the plaintiff for use as evidence rather than her recollection of what was in the letter. Before this objection of defendant was ruled upon plaintiff was permitted to testify that the letter containing the check was received in January and was all typewritten, while the copy offered was partly printed and partly typewritten, and the copy offered was not a copy of the letter she received with the check. After these proceedings the court overruled the objection of defendant and permitted plaintiff to testify as to the contents of the letter. Defendant urges that this was error and relies on a rule that this court has stated that a carbon impression of a letter written on a typewriter made with the same stroke of the keys as the companion impression is an original, and either one may be offered in evidence. (See *Glass Co. v. Pierce*, 87 Kan. 548, 125 Pac. 108.) The fact is, however, that this rule does not apply here because the court heard conflicting evidence and decided that the letter about which plaintiff was offering to testify was not the original of the one offered as a copy. To apply the rule urged by defendant we would have to reach a conclusion as to the facts different than that reached by the trial court. We cannot do this. We hold that the objection of defendant was correctly overruled.

Plaintiff was then permitted to testify as follows:

"A. The letter said for me to send, if we wanted to keep the check or reinstate—it said in the letter for me, if we wanted to reinstate, to sign a health form and to send the check to them.

"Q. What, if anything, did it say about having looked up the law?

"Objection by defendant.

"Overruled.

"A. Well, he said he had looked into the facts of the law and the law said our premium expired October 1, 1933.

"Q. And that was contained in the letter which you received? A. Yes, sir.

"Q. And did you believe that statement to be true? A. Yes, sir; I believed it. I thought they were honest."

We will now consider the argument of defendant that it was error to permit plaintiff to testify as to her conversation with insured concerning the cashing of the cash-surrender check.

On this point the following occurred while plaintiff was on the stand:

"I cashed this check on or about the 21st day of April, 1934. Henry Wright's Grocery cashed it. At that time my son was home in bed with tubercular hemorrhage.

"Q. And before starting to Wright's grocery store to cash this check did you have any conversation with him? A. Yes, sir.

"Q. What was it?

"Objection by defendant, incompetent, irrelevant and immaterial, not binding on the defendant and hearsay.

"Q. What, if anything, did he say whether or not he was going to live or die?

"Objection by defendant, leading and suggestive.

"Overruled.

"A. Well, he told me, he says 'Mother, you just as well take this check and cash it because they told me at Norton that I couldn't live and that my premium expired October 1'—

"Motion by defendant to strike out the answer—not responsive.

"Sustained.

"A. He said that he wouldn't live—they said in that letter—

"Q. Just a minute—you say he said he wasn't going to live? A. Yes, sir.

"Q. What else did he say in the conversation? A. For me to go cash the check and get him some medicine, that they said in the letter that his premium expired October 1 and that he just as well have medicine with his check."

Plaintiff argues that this evidence was admissible on the ground that it was a dying declaration. This court has held that a dying declaration is admissible under certain circumstances in a civil action. (See *Thurston v. Fritz*, 91 Kan. 468, 138 Pac. 625.) That opinion also stated the reason for the rule as follows:

"The theory on which dying declarations have been admitted is that the realization of impending death operates on the mind and conscience of the declarant with strength equal to that of an ordinary oath administered in a judicial proceeding. . . . The real basis of the admissibility, aside from any supposed theory of necessity, is the notion which long ago became a

rule of law that the conscious danger of impending death is equivalent to the sanction of an oath." (pp. 471, 473.)

The above is the generally accepted reason for admitting dying declarations. Applying this reasoning to the facts in this case, we find that insured was ill at the time he made the statement about which plaintiff testified. He did not die, however, until the following October, nearly a year later. The record does not show such a realization of impending death as to indicate that statements he might make should have the sanctity of an oath. As a general rule, where courts have admitted statements not made under oath for the reason that they were dying declarations, the death of the declarant has been more imminent than it was in this case. We hold, therefore, that it was error for the trial court to permit plaintiff to testify concerning this statement of insured. Plaintiff argues here that the actual testimony of plaintiff as to the statement was not objected to by defendant. While the record does not show any formal objection to the testimony, it does show an objection to the question immediately preceding this when the foundation was being laid for asking about the statement. It shows, also, that as soon as the statement was made defendant moved to strike it out. This motion was overruled. Under these circumstances the defendant did not waive its right to argue here that the admission of the statement was error.

The conclusion we have reached on this point would require the reversal of the judgment of the trial court with directions to grant defendant a new trial. There remains, however, to be considered the question of whether the evidence of plaintiff proved actionable fraud. Defendant argues that it did not, and that its demurrer to the evidence of plaintiff should have been sustained. (See 26 C. J. 1062; also, *Atlas Acceptance Corp. v. Weber*, 138 Kan. 89, 23 P. 2d 479.)

Defendant argues that the evidence of plaintiff did not prove that defendant's agents made a misrepresentation of fact; that the representation proved to have been made was not proved to have been false; and that the evidence did not prove that plaintiff and insured relied on the representations proven. If any of these arguments are good, judgment for defendant must follow.

The only fraud pleaded by plaintiff in her petition was the sending of the letter in which plaintiff claims she was advised that the policy had lapsed, and in which the check was enclosed, upon the

back of which was the release which plaintiff claims she and her son were fraudulently induced to sign by the statements contained in the letter. It is this alleged fraud, and it only, upon which plaintiff relies to set aside this release.

It will be remembered plaintiff testified that the letter stated the company had looked up the facts and the law, and the law said their premium expired October 1, 1933. Passing by the somewhat subtle question of whether this was a representation of a fact or a mistaken statement as to the law, it is difficult to see where this representation was made with the intent to deceive and for the purpose of getting the plaintiff to act upon it. There was no evidence offered to show that defendant had not looked up the law; and had not been advised that the grace period expired October 1, 1933. Plaintiff argues this case as though the grace period ended on October 2, 1933, because October 1 came on Sunday, and cites *Lightner v. Insurance Co.,* 97 Kan. 97, 154 Pac. 227. As a matter of fact, it might just as plainly be argued that if the premium was due September 1, thirty-one days from that day would take the period of grace to October 2.

In any event, it cannot be presumed that defendant falsified. (See *Shriver v. Fourth Nat'l Bank,* 121 Kan. 388, 247 Pac. 443.) We have therefore concluded that the demurrer of the defendant to the evidence of plaintiff should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for defendant.

SMITH, J. (dissenting): I find myself unable to agree with the conclusion reached by a majority of the court in ordering judgment for defendant. I agree that the testimony of the plaintiff as to the statement of insured should not have been admitted. This ruling, however, would only require a new trial. I cannot agree that the representations pleaded and proved do not constitute actionable · fraud. In the first place, the letter which plaintiff testified she received from defendant cannot be divorced from the conversations had by plaintiff with the agents of defendant at her home along in the early part of October nor from the conversations had by plaintiff with the agents of defendant at the district office of defendant in December. I do not suppose the board of directors of the insurance company knew about these conversations, but it cannot be said that the company was not bound by them. At that time the plaintiff could have paid the monthly premium and have kept the

policy in force. The agent of the company knew this—hence, the company knew it. · Obviously it was to her interest to do so. The agent of defendant told her, however, that she could not do that on October 2; that the policy had lapsed. Here an examination of the policy is interesting. The premium was due on the first day of each month. Everybody admits that. Everybody admits that the premium that was not paid was the one that was due in the first place on September 1. Insured had all day September 1 to pay this premium. The provision as to the grace period in the policy is as follows:

"A grace period of thirty-one days, without interest charge, will be granted for the payment of every premium after the first, during which grace period the insurance shall continue in force, but if the insured dies during such period the portion of the unpaid premium for insurance for the current policy month shall be considered as an indebtedness to the company for which this policy is security."

Clearly, under that provision, insured had thirty-one days from the 1st day of September to pay the premium before it lapsed. G. S. 1935, 60-3819, provides as follows:

"The time within which an act is to be done shall be computed by excluding the first day and including the last; if the last day be Sunday, it shall be excluded."

Following the provisions of that statute thirty-one days from September 1 would be October 2, and the tender was in time even had October 1 not fallen on Sunday. It is clear, then, that the plaintiff was in time when she tendered the premium on October 2. It seems idle to suggest that a company such as defendant, with policies such as the one in question being held all over the state and with premiums in many of them coming due on the first of each month, did not know of the above provision of the statute and of its application to policies such as this one. At least it had a better opportunity to know the facts than did this plaintiff and insured. The argument that the representations made here were as to matters of law and not of fact, and hence were not actionable, is too technical to appeal to my sense of justice. Moreover, some misstatements as to matters of law are actionable. In *Madison Trust Co. v. Helleckson*, 216 Wis. 443, 257 N. W. 691, the fifth paragraph of the headnote, as shown in the last citation, is as follows:

"Representations as to matters of law, while not ordinarily basis for action for fraud, are fraudulent if they are made by one who has superior means of information and professes knowledge of law, and thereby obtains unconscion-

able advantage of another who is ignorant and has not been in situation to become informed."

In *Security Sav. Bank v. Kellems*, (Mo.) 274 S. W. 112, paragraph 6 of the headnote states:

"Though generally misrepresentation as to matter of law cannot constitute remedial fraud, where there is a relation of trust and confidence or where one with superior knowledge of law deceives another ignorant of the law by misrepresenting it to him, relief may be granted."

This rule is based on good reasoning and common justice. Why should not a company which has every reason and opportunity in the world to know the law be held liable for a misrepresentation of the legal effect of certain actions to one who is not in nearly as good a position to know? A better occasion for invoking that rule can hardly be imagined than this case. Here was a widow out in a mining camp of Crawford county, doing laundry work for money to pay these premiums. All she ever saw or heard of the company was the agent who came out there to sell the policy and the agent who came to collect. Probably she never heard of the statute for computing time. On the other hand, the company through its agents and employees were in the business of figuring when policies would lapse, and no doubt had considered this very question many times. The train of events which resulted in plaintiff's being defrauded was started when the agent refused to accept the premium on October 2. It was accelerated when the people in the district office refused to accept the premiums and it was finally brought to a conclusion when the letter containing the check was mailed to insured and plaintiff. The statements made by the agent of the company at the home of plaintiff were not part of the fraud pleaded in the petition. Knowledge on the part of defendant that the statements contained in the letter were false was pleaded; also, it was pleaded that the statement of the agent of the company that the policy lapsed on October 1 was wrongful. I insist that the knowledge gained by that agent was knowledge gained by defendant, and with that knowledge in its possession the letter was sent by it, and this letter misstated a fact, the falsity of which was particularly within the knowledge of the defendant, and that this false statement induced plaintiff and insured to sign the release. Even accepting the carbon copy of the letter which defendant admits it mailed to plaintiff as the letter, and the only letter that was mailed, the skirts of defendant are not entirely clean. Let us look at that letter. The letter refers to

premium due September 1, 1933. It then contains this sentence: "Your policy lapsed for nonpayment of the above premium." The defendant, through the knowledge of its agent, who had talked to plaintiff and insured, knew that this policy had not lapsed on September 1, 1933. It knew it did not lapse until October 2, 1933, and it knew that plaintiff had tendered the premium due before the policy lapsed because its agent knew it. I maintain a person unlearned in the law and not skilled in the use of business terms would be justified in concluding that the letter meant that September 1, 1933, was the last date on which the premium could be paid. Nor is this all. If there ever was a case where the knowledge of an agent should be held to be the knowledge of the corporation whose agent he is, it is in the case of an insurance company, with its agents reaching into the home of every policyholder. The letter then contains the following:

"We have not received an application for reinstatement nor an expression from you as to your intentions, and acting on the belief that you would prefer the balance of cash value due, we are enclosing check herewith. Please send the policy to us. If, however, it is your intention to revive this insurance, return the check and we will inform you of our requirements for reinstatement."

The policy provided that the cash-surrender value of the policy would be paid upon presentation of the policy for legal surrender, together with a written request therefor. No request for cash-surrender value was made here and the policy had not been surrendered. It looks a little bit as though the company was in a hurry to get this check into the hands of plaintiff and insured so that they might endorse it and thereby be in the position of having executed the release printed on the back.

Do all these things constitute actionable fraud? It must be remembered that the element that makes misrepresentation actionable is the false impression created in the mind of the person defrauded. In *Stewart v. Wyoming Ranche Co.*, 128 U. S. 383, 9 S. Ct. 201, the supreme court of the United States said:

"The gist of the action is fraudulently producing a false impression upon the mind of the other party." (p. 388.)

The rule is also laid down in 26 C. J. 1100. Section 31 is as follows:

"Fraudulent misrepresentation may be effected by half truths calculated to deceive. Thus a representation literally true is actionable if used to create an impression substantially false, as where it is accompanied by conduct calculated to deceive."

In *Henry v. Collier*, 69 Okla. 24, 169 Pac. 626, the court said:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of producing it are immaterial." (Syl. ¶ 1.)

In *Wolfe v. A. E. Kusterer & Co.*, 269 Mich. 424, 428, 257 N.'W. 729, the court quoted from an English case, as follows:

"If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is none the less false although if one takes each statement by itself, there may be difficulty in showing that any specific statement is untrue. (*Aarons' Reefs v. Twiss*, 1896 App. Cas. [L. R.] 273.)"

Here the plaintiff had an interest in keeping the policy on her son's life in force. Through statements and conduct of agents of defendant she was caused to release her interest in this policy. She says she would not have released this interest had it not been for these statements and this conduct. The jury had a right to believe her. I maintain that conduct and statements that create a false impression in the mind of a person, thus causing that person to release a right of action or to part with some other valuable thing, is fraudulent, whether it be part of an elaborate scheme or a single statement or act.

It will be noted that the insured did not die until nearly a year after the claimed lapse of the policy. No tender of the premium was made after October 2, 1933, unless the visit to the office during December of that year should be treated as a tender. However, the agent of defendant had said to plaintiff that it would be useless for her to tender the premiums without an application for reinstatement. The rule is stated in 3 Couch on Insurance, page 2057, as follows:

"Although under ordinary circumstances a tender must be made on each occasion when a premium or assessment falls due, and notwithstanding the fact that it has been held that a tender, after refusal, necessitates tenders thereafter, it undoubtedly is true that the law does not require that a party should persist in the doing of a futile act, in consequence of which the general rule is that, if an insurance company or benefit society or association refuses to accept a sum properly tendered in payment of a premium or assessment, no formal tenders of subsequent premiums or assessments need be made in order to keep the contract of insurance in force, at least, unless the insurer revives the duty of the insured by notice that they will be received, or are due, or in some manner manifests a willingness to accept payment."

The case of *Scotten v. Metropolitan Life Ins. Co.*, (Mo.) 68 S. W. 2d 60, was a great deal like this case. There the com-

pany claimed that the policy had lapsed on a certain day and would be reinstated upon insured furnishing the company with evidence of insurability. This was not done, and after the death of insured the beneficiary claimed the policy was still in force because the company had made a misstatement of when the premium was due. On the question of the necessity for a tender to keep the policy in force it was said:

"(3) 'The obligation of the contract being created, a denial of its existence is equivalent to a repudiation or renunciation of liability under it.' (13 C. J. 655; *Laswell v. National Handle Co.,* 147 Mo. App. 497, 536, 538, 126 S. W. 969.)

"The conduct of the defendant throughout the transaction, as well as in the trial, conclusively shows that it would not have accepted a premium at any time after May 16, 1927, unless insurability was shown. Therefore, the mere tender of premium at any time after May 16 would have been a vain thing.

"(4) 'A tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony.' 62 C. J. 658, 659; *Smith v. Means,* 170 Mo. App. 158, 171, 155 S. W. 454." (p. 62.)

To the same effect is *Klinkhardt v. Crescent Ins. Co.,* (Mo. App.) 47 S. W. 2d 210. (See, also, *Newman v. John Hancock Mut. Life Ins. Co.,* [Mo. App.] 7 S. W. 2d 1015.) In *Saunders v. Independent Nat. Life Ins. Co.,* (La. App.) 133 So. 451, it was said:

"The plaintiff, a beneficiary under a policy of industrial life insurance, brings this suit for $126, the face value of the policy. The case is defended upon the ground that the policy had lapsed because of the failure to pay premiums. Answering this contention, plaintiff claims that an attempt was made to pay the premiums, but that the defendant insurance company refused to accept further payments because of the fact that someone living in the same house with her had contracted tuberculosis and the officials of the company were unwilling to take the risk of infection, which further transactions with her might involve.

"(1, 2). Of course, if the premiums were tendered and arbitrarily refused, the policy did not lapse. (*Newton v. National Life Ins. Co.,* 161 La. 357, 108 So. 769.)"

In *Kenyon v. National Life Ass'n,* 57 N. Y. Supp. 60, it was said, in substance:

"Where a policy has been illegally lapsed by an insurer, it is not incumbent on assured to tender subsequent premiums according to the terms of the policy, which were uncertain in amount and to be fixed by the insurer, of which she was given no notice, in order to preserve her rights under the

policy notwithstanding it provided that, in case of failure to receive notice, she should pay the amount of the last premium, since such clause should be construed to relate to a case of accident or mistake only. . . . Where a policy was illegally lapsed by an insurer, assured may sue in equity to have it continued, or he may elect to consider it at an end and recover its just value, or wait until it becomes payable according to its terms, and then try the question of forfeiture."

In *Baumann v. Metropolitan Life Ins. Co.*, 144 Wis. 206, 128 N. W. 864, the court said in substance:

"Where a life policy is improperly canceled by insurer and the beneficiary has knowledge thereof, no duty devolves on her to tender subsequent premiums." (Headnote 4.)

It should be noted that these were actions on the insurance policies. The reason for this rule springs from a well-recognized rule that it is never necessary that a person do a futile thing. There can be no doubt in this case but that defendant would have refused to accept the monthly premiums had insured and plaintiff tendered them to defendant on the first of every month. Hence, under the authorities just cited, it was not necessary that this tender should have been made. There can be no doubt in my mind but that plaintiff and insured had a valuable interest in that policy at the time the check was received. There is no doubt but that there was substantial evidence that what the agents of defendants said and did caused plaintiff and insured to endorse this check and thereby release defendant from liability. There is no doubt in my mind but that there was substantial circumstantial evidence that defendant, with the knowledge of the rights of plaintiff not known to plaintiff or insured, intended the statements in the letter to mislead plaintiff. For all these reasons I maintain that the judgment should be reversed for a new trial, rather than that judgment should be ordered for defendant.