WOLFE v. A. E. KUSTERER & CO.

1. FRAUD—SUPPRESSION OF A MATERIAL FACT.
   Fraud may be consummated by suppression of a material fact by either party to a contract of sale which he is in good faith bound to disclose, as well as by open false assertions since by such suppression there is fraudulently produced a false impression upon the mind of the other party.

2. SAME—DESCRIPTIVE CIRCULARS—SUPPRESSION OF MATERIAL FACTS.
   Circular describing bonds purchased from defendant securities broker which suppressed fact that cash instead of real estate mortgages could be security in *any* amount and which also failed to state that demand certificates of deposit as well as currency were considered as cash *held*, concealment of a material fact fraudulently producing a wrong impression.

3. BILLS AND NOTES—CERTIFICATES OF DEPOSIT.

   While certificates of deposit may in some instances be treated as cash, they are ordinarily interpreted as mere promissory notes.

4. FRAUD—RELIANCE UPON MISREPRESENTATION BY AGENT.

   In order to make misrepresentation actionable there must be a reliance upon the representation and it makes no difference that the one who relied on the representation is a son and agent of party alleged to have been defrauded.

5. BROKERS—DUTY OF FAIR AND OPEN DEALING IN SECURITY TRANS-ACTION.

   Seller in security transaction is under requirement of fair and open dealing and is obliged to exercise great care in presenting a clear and understandable statement of the safety of securities offered for sale.

6. FRAUD—SALE OF SECURITIES—INTERPRETATION OF CIRCULARS.

   In the interpretation of circulars concerning securities, court is bound by effect they would produce upon an ordinary mind and may take into consideration not only facts stated but the facts suppressed and clause stating that statements made were not guaranteed but "based upon information we believe to be accurate and reliable" does not relieve defendant seller.

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 12, 1934. (Docket No. 44, Calendar No. 37,998.) Decided December 10, 1934.

Case by Nellie Shulsky Wolfe against A. E. Kusterer & Company, a Michigan corporation, for rescission of bonds purchased because of alleged fraudulent misrepresentations. Judgment for plaintiff. Defendant appeals. Affirmed.

*Butterfield, Keeney & Amberg,* for plaintiff.

*Travis, Merrick, Johnson & McCobb,* for defendant.

BUSHNELL, J. This is an action to recover the amount plaintiff paid defendant, broker, for six per cent. collateral trust gold bonds series "E" of Central Securities Company of Asheville, North

Carolina, of the par value of $5,000, the purchaser having rescinded and tendered return of the bonds, alleging fraudulent misrepresentations on the part of the seller. Defendant appeals from a judgment for the purchase price, plus interest, less liquidating dividends paid plaintiff by the receiver of the trustee under the indenture securing the bonds.

The two purchases of these bonds were made for plaintiff in 1930 by her son, Harry Shulsky, from Roger Verseput, Jr., who was then secretary-treasurer and sales manager of the defendant company, after conversations, discussions, explanations, and examination of a circular compiled by defendant describing the issue. The case turns on the oral representations by seller and those made in its circular. The second purchase was within 90 days of the first, with very little added discussion between the representatives of the parties.

Plaintiff contends that she was led to believe that the bonds were similar to real estate mortgage bonds in that the collateral was to be the direct obligations of mortgage companies, secured by guaranteed real estate mortgages on improved city property, mostly residences. The circular, which says, ''These gold bonds constitute four name paper,'' after setting out the security just mentioned, continued:

''And in lieu of the above, United States government bonds, United States treasury certificates of indebtedness and/or cash may be deposited.''

Plaintiff argues that this language led her to believe that the substitution of cash was to be in small amounts and only for temporary periods. The statement in the circular was not in conformity to the provisions of the trust indenture by which any amount of either type of security mentioned could be deposited. When plaintiff made her first pur-

chase, approximately 20 per cent.. of the security was in cash and at the time of the second purchase, almost 50 per cent., due to the trustees having wrongfully sold some United States government bonds. A supplemental indenture provided, that should the cash collateral exceed 10 per cent., the trustees should furnish a bond guaranteeing payment of the full amount of such excess.

Plaintiff also alleges that while the circular did mention that "cash" might be security, the indenture provided that demand certificates of deposit issued by any bank, etc., with not less than $2,000,000 paid in capital and surplus, shall be deemed to be and considered as cash, and that the practice was for the trustee to deposit with its own banking department the cash revenues and hold the certificate of deposit issued to itself as security. It was this practice of loaning money to itself that subsequently affected the worth of the bonds. The Central Bank & Trust Company, trustee under the indenture, closed its doors on November 19, 1930, and only $25,000 worth of certificates of deposit were guaranteed. On December 17th, after hearing about the insolvency, plaintiff tendered back the bonds and demanded the return of her money. Was there a false and fraudulent misrepresentation upon which plaintiff relied?

"Fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions." *Fred Macey Co.* v. *Macey,* 143 Mich. 138, 153 (5 L. R. A. [N. S.] 1036).

"In an action of deceit, it is true that silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud· celare;* a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of

sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party." *Stewart* v. *Wyoming Cattle Ranche Co.*, 128 U. S. 383, 388 (9 Sup. Ct. 101).

While the defendant may not have "concealed" the fact that "cash" could also be security, it did at least "suppress" the fact. A requirement of fair and open dealing is placed upon a seller in security transactions.

Mr. Justice Lehman said in *Hotaling* v. *A. B. Leach & Co.*, 247 N. Y. 84, 88 (159 N. E. 870, 57 A. L. R. 1136):

"Critical examination of the statements contained in the circular leaves some doubt as to whether any of them was literally untrue. As a whole the circular presents a picture which would lead an investor to believe that the security behind the bonds offered was far greater than was the fact."

Very close on its facts to the present case is *Downey* v. *Finucane*, 205 N. Y. 251 (98 N. E. 391, 40 L. R. A. [N. S.] 307), where the question was whether a prospectus under which bonds were issued had truthfully stated the security therefor. The court said:

"Speaking of an equivocal prospectus which was condemned as fraudulent by the House of Lords in *Aarons' Reefs* v. *Twiss*, 1896 App. Cas. (L. R.) 273, 275, 285 (74 L. T. 794), Lord Halsbury calls the language ambidexterous; and this expression aptly characterizes that of the present case. In the case cited it was argued, as it is suggested here, that there was no specific allegation of fact which is

proved to be false; but the lord chancèllor protested against this being regarded as the true test and declared that the question was whether, taking the whole thing together—there was a false representation. 'I do not care by what means it was conveyed—by what trick or device or ambiguous language; all those are expedients by which fraudulent people seem to think they can escape from the real substance of the transaction. If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is none the less false although if one takes each statement by itself, there may be a difficulty in showing that any specific statement is untrue.' ''

Plaintiff had every reason to believe, from the representations made, that the bonds were to be secured principally by real estate mortgages. The circular suppressed the fact that cash could be security in *any* amount. There is no reason why its language should be at variance from that of the indenture. The purchaser did not intend to deposit money in a bank and never contemplated that the paper she purchased would be secured in such manner.

The circular also failed to state that demand certificates of deposit, issued by any bank, etc., shall be deemed to be and considered as cash. The indenture allowed the trustee to deposit the cash in its own banking department and hold as security the certificates of deposit issued to itself. Had the indenture not permitted this, such action would have been misfeasance on the part of the trustee, for the law requires such funds to be kept in a separate trust account. *First National Bank & Trust Co.* v. *Hood,* 204 N. C. 351 (168 S. E. 528). Further, as cash was mentioned in the circular in connection with United States government bonds and United States treasury certificates of indebted-

ness, and as the plaintiff reasonably thought the substitution of cash was to be in small amounts and for short periods only, it was only reasonable that plaintiff should interpret cash in its ordinary sense —as currency. Legally certificates of deposit are in some instances treated as cash. *Bingham* v. *County of Montcalm,* 251 Mich. 651 (where deposit with a justice of the peace of a certificate of deposit properly indorsed was held to satisfy the statutory requirement for cash bail). But that this is not the ordinary interpretation of the term, see *Dunlap* v. *Whitmer,* 133 La. 317 (62 South. 938, Ann. Cas. 1915 C, 990); *Behrends* v. *Beyschlag,* 50 Neb. 304 (69 N. W. 835); *Crocker & Williams* v. *Crane,* 21 Wend. (N. Y.) 211 (34 Am. Dec. 228). We have held that a certificate of deposit is nothing more than a promissory note. *Beardsley* v. *Webber,* 104 Mich. 88; *City of Lansing* v. *Wood,* 57 Mich. 201; *Birch* v. *Fisher,* 51 Mich. 36; *Tripp* v. *Curtenius,* 36 Mich. 494 (24 Am. Rep. 610); *Cate* v. *Patterson,* 25 Mich. 191. Certainly the man on the street would not consider a promissory note as cash. There is a great difference in the safety of cash and of certificates of deposit. The plaintiff had the right to presume that cash, as here used, implied the safer type of security. If defendant intended to include the other variety, it should have so, stated. Failing to do this, it has concealed a material fact and thus fraudulently produced a wrong impression.

Did plaintiff rely upon the representations?

"It is a well-settled rule, familiar and fundamental, that, in order to make misrepresentation actionable, there must be a reliance upon the representation." *Kimble* v. *Gillard,* 177 Mich. 250, 256.

Plaintiff's son testified that he relied on the statements in the circular as to both the first and second

purchase, and upon the representations of defendant's sales manager.

"One who is defrauded through false representations made to his agent upon which the agent relies is in no different position from one who relies upon such representations himself." *General Finance Corp.* v. *Keystone Credit Corp.* (C. C. A.), 50 Fed. (2d) 872, 882.

Defendant so worded its circular as to make it as attractive as possible. Those selling securities should be obliged to exercise great care to present to prospective purchasers a clear and understandable statement of the safety of securities they offer for sale. The exact language of the circular may be the truth but it is not the whole truth. In speaking of the question of stock circulars, Mr. Justice Brown said in *Wiser* v. *Lawler,* 189 U. S. 260, 264 (23 Sup. Ct. 624):

"As they were circulated as an inducement to take stock in the enterprises, we are bound to interpret them by the effect they would produce upon an ordinary mind. * * * In estimating the probability of subscribers being misled by these prospectuses we may take into consideration not only the facts stated, but the facts suppressed. * * * They are entitled to know the *cons* as well as the *pros.*"

That the circular said: "The statements contained herein are not guaranteed but are based upon information which we believe to be accurate and reliable," does not relieve defendant. *Aldrich* v. *Scribner,* 154 Mich. 23 (18 L. R. A. [N. S.] 379), and *Boss* v. *Tomaras,* 241 Mich. 540.

The judgment is affirmed, with costs.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred.