M&D, INC v McCONKEY

Docket No. 175201. Submitted March 4, 1998, at Lansing. Decided July 31, 1998, at 9:10 ᴀ.ᴍ. Leave to appeal sought.

M&D, Inc., Donmar, Inc., and others brought an action in the Jackson Circuit Court against W. B. McConkey, Relenco Partnership, McConkey Real Estate Company, and others, seeking damages arising out of the flooding of the commercial property that Relenco Partnership had sold to M&D on an "as is" basis. The property had been leased by M&D to Donmar. The plaintiffs alleged that the defendant partnership and its individual partners and the real estate company and its individual brokers, agents, and officers knew of the flooding problem and had a duty to disclose the existence of the problem and pleaded claims of breach of contract, fraud, innocent misrepresentation, and negligent failure to disclose. The court, Chad C. Schmucker, J., dismissed all the claims against all the defendants except the claim of negligent failure to disclose brought against the partnership and its individual partners. The matter went to trial against the partnership defendants as a negligence action for the recovery of damages incurred as a direct result of the partnership's failure to disclose the flooding condition, but with damages limited to those damages that occurred before M&D had discovered or should have discovered the flooding. At the close of proofs, the court entered a directed verdict for the partnership defendants with respect to M&D on the basis that M&D had suffered no damages because Donmar had continued to make lease payments after the flooding had occurred. A jury returned a verdict of no cause of action with respect to the remaining claim by Donmar against the partnership defendants. The plaintiffs appealed. The Court of Appeals, Young, P.J., and Corrigan and M. J. Callahan, JJ., in an opinion released November 14, 1997, affirmed the dismissals of all the claims except for M&D's claim of fraudulent concealment or silent fraud against the partnership defendants, which it reversed on the basis that it was required by MCR 7.215(H) to follow the holding in *Shimmons v Mortgage Corp of America*, 206 Mich App 27 (1994), despite disagreeing with the holding in that case. 226 Mich App 801, 805-815 (1997). By its order of November 26, 1997, the Court of Appeals vacated the November 14 opinion and convened a special panel pursuant to MCR 7.215(H)

to resolve the conflict between the position taken by the panel in the *M&D* opinion and the position taken by the panel in the *Shimmons* opinion. 226 Mich App 801 (1997).

After consideration by the conflict resolution panel, the Court of Appeals *held*:

1. To the extent that the *Shimmons* panel held that fraudulent concealment can be established by showing only that the seller of property knew that there was a hidden defect and that the purchaser had no knowledge of the defect, the *Shimmons* holding was overly broad and in conflict with Supreme Court precedent. In order to establish a claim of fraudulent concealment, there must be evidence that the seller made some sort of representation that was false. A misrepresentation need not necessarily be by words; rather, a misrepresentation can be shown by silence where a party who is under a duty to disclose known facts intentionally suppresses those facts by remaining silent for the purpose of leaving the other party with a false impression.

2. The elements of fraudulent concealment were not established. There was no evidence of any legal or equitable duty on behalf of the partnership defendants to disclose to the plaintiffs any known history of flooding of the subject property. The documents of sale specifically indicated that the partnership defendants made no representations or implied warranties with respect to the condition of the property and that the property was being sold "as is." Further there was no evidence that the plaintiffs made any inquiries concerning flooding of the property such that the silence by the partnership defendants could be interpreted to be an attempt to create the misimpression that there was no known flooding problem.

3. The trial court properly dismissed the common-law fraud claim on the basis that proof of a false representation is necessary in order to establish such a claim and that the plaintiffs had failed to offer any proof that any affirmative representation had been made. For the same reason, the absence of evidence of any affirmative representation having been made, the trial court properly dismissed the claim based on innocent misrepresentation.

Affirmed.

Fraud — Fraudulent Concealment — Misrepresentation — Silence.

A claim of fraudulent concealment in the sale of property requires that the party bringing the action produce evidence that the seller made some sort of representation that was false; a misrepresentation need not necessarily be by words; a misrepresentation can be shown by silence where a party who is under a duty to disclose known facts intentionally suppresses those facts by remaining

silent for the purpose of leaving the other party with a false impression.

*Cummings, McClorey, Davis & Acho* (by *Ronald G. Acho* and *Gregory L. Ulrich*), for the plaintiffs.

*Dennis E. Whedon, P.C.* (by *Dennis E. Whedon*) and *Charles H. Aymond, P.C.* (by *JoAnne Rosenfeld*), for W. B. McConkey, Relenco Partnership, and others.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Jerome C. Cavanagh*, Assistant Attorney General, for the Michigan Department of Transportation.

*Dickinson Wright PLLC* (by *Jeffery V. Stuckey* and *Edward R. Becker*), for W. B. McConkey, McConkey Real Estate Company, and others.

Before: JANSEN, P.J., and MACKENZIE, WAHLS, GRIBBS, MURPHY, FITZGERALD, and O'CONNELL, JJ.

JANSEN, P.J. Pursuant to MCR 7.215(H), this special conflict panel was convened to resolve the conflict between the prior opinion in this case, 226 Mich App 801 (1997), and *Shimmons v Mortgage Corp of America*, 206 Mich App 27; 520 NW2d 670 (1994). The prior panel in this case held that it was bound by MCR 7.215(H) to follow *Shimmons*, which held that a plaintiff may allege fraudulent concealment even where the purchase agreement includes an "as is" clause and that fraudulent concealment is established by showing that the hidden defect (which need not be unreasonably dangerous) was known to the vendor and that the purchaser had no knowledge of it. *Id.* at 29. The panel in the prior opinion of this case noted its disagreement with the rule of law announced in

*Shimmons,* but could not "in a principled fashion distinguish it," and therefore was compelled to reverse the trial court's order dismissing M&D's fraud claim based on *Shimmons* and to remand the case to allow M&D to pursue the claim below.

Following an en banc order, 226 Mich App 801 (1997), invoking the conflict resolution procedure set forth in MCR 7.215(H), this case was resubmitted to this special panel. We now resolve the conflict in favor of the opinion in *M&D, Inc,* which would have held that plaintiffs could not establish a basis for any claim of fraud because they failed to present sufficient evidence under any claim of fraud to create a genuine issue of material fact for trial. We hold that, in order to establish a claim of silent fraud, there must be evidence that the seller made some sort of representation that was false. It is not enough, as this Court in *Shimmons* held, that the seller had knowledge of the defect and failed to disclose it; rather, the seller must make some type of misrepresentation. A misrepresentation need not necessarily be words alone, but can be shown where the party, if dutybound to disclose, intentionally suppresses material facts to create a false impression to the other party. See *Wolfe v A E Kusterer & Co,* 269 Mich 424; 257 NW 729 (1934).

In the present case, plaintiff M&D purchased commercial property in January 1991 on an "as is" basis from defendant Relenco Partnership. Defendant McConkey Real Estate Company handled the sale of the property. M&D leased the property to plaintiff Donmar, Inc., for the operation of a pet supplies store. Two months after the store opened, the building flooded after a heavy rainfall. The evidence at

trial showed that the property had experienced flooding problems for many years. W. B. McConkey testified at trial that he had witnessed flooding on the property. However, there was no evidence that plaintiffs asked whether the property had experienced any flooding, and defendants never made any representation concerning flooding to plaintiffs. Further, Relenco refused to prepare a seller's disclosure statement and made this refusal an explicit part of the purchase agreement. Rather, on the face of the preprinted seller's disclosure statement, the following disclaimer appears: "Owner has never occupied this property. No representations or warranties implied as to condition. Property being sold in 'as is' condition."

Plaintiffs filed suit in October 1992, raising claims of breach of contract, negligence, innocent misrepresentation, and fraud against Relenco and McConkey Real Estate.[1] The trial court dismissed plaintiffs' claims of fraud and innocent misrepresentation pursuant to MCR 2.116(C)(10). A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for the claim. *Id.* The court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted to it to determine whether a genuine issue of any material fact exists to warrant a trial. *Id.*

There are essentially three theories to establish fraud: (1) traditional common-law fraud, (2) innocent

---

[1] Plaintiffs also filed suit against the Michigan Department of Transportation for trespass nuisance, and the trial court dismissed that claim pursuant to MCR 2.116(C)(10).

misrepresentation, and (3) silent fraud. For an excellent discussion of this issue, we repeat Judge YOUNG's opinion from *M&D, Inc, supra*, pp 806-809, and adopt it as our own:

### 1. COMMON-LAW FRAUD

As a general rule, actionable fraud consists of the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976); *Irwin v Carlton*, 369 Mich 92, 94; 119 NW2d 617 (1963); *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919); see also *Arim v General Motors Corp*, 206 Mich App 178, 195; 520 NW2d 695 (1994).

In this case, the trial court, in ruling with regard to Relenco's motion for summary disposition, held that, concerning the flooding problem of the property[,] Relenco made no material "representation" of fact to plaintiffs upon which a common-law fraud claim could rest. Indeed, plaintiffs failed to present evidence that defendant made *any* affirmative representations concerning the nature of the flooding problem on the subject property. We agree with the circuit court's reasoning that, without a *representation*, plaintiffs could not maintain an action for common-law fraud because proof of some *false representation* made with an intent to deceive was a necessary element of their prima facie case.

### 2. INNOCENT MISREPRESENTATION

A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation. *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 118; 313 NW2d 77 (1981). The innocent misrepresentation rule represents a species of fraudulent misrepresentation but

has, as its distinguished characteristics, the elimination of the need to prove a *fraudulent purpose* or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation. *Id.* at 118. Thus, the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false. *Id.* at 117. Finally, in order to prevail on an innocent misrepresentation claim, a plaintiff must also show that the plaintiff and defendant were in privity of contract. *Id.* at 118-119.

In the present case, only M&D was in privity of contract with Relenco, and, therefore, it is the only plaintiff that could raise an innocent misrepresentation claim against Relenco. Moreover, as the trial court concluded, because Relenco made no false, or other, representation regarding the condition of the property, neither corporate plaintiff could maintain a claim of innocent misrepresentation. *Id.* at 118.

### 3. "SILENT FRAUD"

"Silent fraud," also known as fraud by nondisclosure or fraudulent concealment, is a commonly asserted, but frequently misunderstood, doctrine. This is primarily because most fraud claims are based upon alleged affirmatively stated false representations of material fact. A claim of "silent fraud" requires a plaintiff to set forth a more complex set of proofs. In *Lorenzo v Noel*, 206 Mich App 682, 684-685; 522 NW2d 724 (1994), this Court gave the following explanation of the so-called "silent fraud" doctrine:

" ' "A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." ' *Williams v Benson*, 3 Mich App 9, 18-19; 141 NW2d 650 (1966), quoting *Tomkins v Hollister*, 60 Mich App 470, 483; 27 NW 651 (1886). Thus, 'the suppression of a material fact, which a party in good faith is duty-bound to

disclose, is equivalent to a false representation and will support an action in fraud.' *Williams* at 19."

In other words, Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty of disclosure. See *Black, supra* at 125.

M&D and Donmar argue that dismissal of their fraud and misrepresentation claims was improper because Relenco, and specifically W. B. McConkey, its managing partner, knew about the history of the flooding problem and its severity and failed to disclose its concealed condition to plaintiffs before the sale of the property. Relying on *Shimmons v Mortgage Corp of America,* 206 Mich App 27; 520 NW2d 670 (1994), and *Clemens v Lesnek,* 200 Mich App 456; 505 NW2d 283 (1993), plaintiffs argue that a fraud claim can be maintained where the purchaser is able to prove that the vendor knew about a defective condition and did not disclose it to the purchaser. We do not believe that this argument is supported by existing Supreme Court precedent.

Our Supreme Court has recognized a vendor's duty to disclose material facts when the vendor and purchaser have generally discussed the condition at issue—when the purchaser has expressed some particularized concern or made a direct inquiry—and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition and the buyer detrimentally relies upon the resulting *misdirection. Groening v Opsata,* 323 Mich 73; 34 NW2d 560 (1948). A vendor also has a duty to disclose " 'subsequently acquired information which he recognizes as rendering untrue, or misleading, previous *representations* which, when made, were true or believed to be true.' " *Black, supra* at 127 (emphasis added; citation omitted).

In *Groening, supra* at 77, when the plaintiffs considered purchasing a house built on a bluff, they asked the defendants whether the house was built too close to the bluff and whether, as a result, the house was in a dangerous position. The plaintiffs also told the defendants that they had been warned that the bluff was breaking off and that the whole property would eventually collapse. *Id.* at 78. The defendants responded that the house was not too close and that the bluff was perfectly safe. *Id.* at 78. One year after the purchase, the bluff completely eroded, and the evidence

indicated that the defendants knew at least two years before the sale that the bluff had been eroding. *Id.* at 79.

Recognizing that "concealment of material facts that one under circumstances is bound to disclose may constitute actionable fraud," *id.* at 83, the Court explained that the defendants' responses created a false impression equivalent to an express and intentional misrepresentation:

"[The defendants] made replies to plaintiffs' specific inquiries, which replies did not bring forth the facts that plaintiffs were seeking to learn, but were in such form as naturally tended to reassure plaintiffs and to cause them to proceed on the assumption that the property was not in any danger from erosion. Under such circumstances the concealment of the true facts and the deliberate creating of false impressions and inferences is the equivalent of an express and intentional misrepresentation.

\*          \*          \*

"In replying to plaintiffs' inquiries concerning the property it was the duty of defendants to state the facts called for in accordance with their knowledge of the situation. Their replies were well calculated to create the impression that they were doing so. Actually, however, they were, as the jury found, guilty of misrepresentation. Such misrepresentation lay in the positive misstatements made and in the failure to give the true facts while ostensibly doing so." [*Id.* at 82-84.]

Accordingly, the touchstone of liability for misdirection or "silent fraud" is that *some* form of representation has been made and that it was or proved to be false. In other words, we believe that, at least as applied to fraud cases, there is no general inchoate duty to disclose all hidden defects.

In *Wolfe v A E Kusterer & Co*, 269 Mich 424; 257 NW 729 (1934), the Supreme Court explained the distinction between nondisclosure generally and nondisclosure that is equivalent to an affirmative fraudulent misrepresentation:

" 'In an action of deceit, it is true that silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. But mere silence is quite different from concealment; *aliud est tacere, aliud celare*; a suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence

of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. *The gist of the action is fraudulently producing a false impression upon the mind of the other party.*' " [*Id.* at 427-428, quoting *Stewart v Wyoming Cattle Ranche Co*, 128 US 383, 388 [9 S Ct 101; 32 L Ed 439 (1888)] (emphasis added).]

Our review of Michigan Supreme Court precedent regarding this issue reveals that, in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading. See, e.g., *Nowicki v Podgorski*, 359 Mich 18; 101 NW2d 371 (1960); *Sullivan v Ulrich*, 326 Mich 218; 40 NW2d 126 (1949); *Wolfe, supra.*

In the instant case, the documents of the sale transaction contain the "as is" clause and other explicit statements disclaiming seller representations and warranties about the condition of the property. While M&D and Donmar allege that Relenco knew about the flooding condition but did not disclose it, plaintiffs have not alleged facts establishing that Relenco had a duty to disclose its knowledge of the flooding. Plaintiffs offered no proof that they even asked Relenco or other defendants questions that might arguably have imposed on defendants the obligation to disclose the historical flooding on the property or risk that plaintiffs might be misled in some fashion about this issue. Consequently, Relenco was never put to the trouble of lying about, or otherwise concealing, its knowledge of the problem. Therefore, plaintiffs could not prove that Relenco made a representation or omission that left them with the distinct impression that the property did not have a flooding condition.

Thus, Supreme Court precedent clearly indicates that, in order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure. *Black, supra* at 125, 127. We believe that to the extent that *Shimmons* held that a claim of fraudulent concealment can be established by showing only that the seller knew

there was a hidden defect and that the purchaser had no knowledge of it, the holding was overly broad and in conflict with Supreme Court precedent. Although *Shimmons* purported to rely on *Clemens* for its holding, this Court in *Clemens, supra* at 460, simply held that the plaintiffs, the purchasers, did not have to prove that the undisclosed hidden defects were unreasonably dangerous in order for them to recover damages for fraud despite the "as is" clause contained in the purchase agreement. The *Clemens* Court further cited *Popielarski v Jacobson*, 336 Mich 672, 686-687; 59 NW2d 45 (1953), for the well-established rule that if a seller makes fraudulent representations before a purchaser signs a binding agreement, then an "as is" clause may be ineffective. The holding in *Clemens* was limited; this Court only held that the plaintiffs could recover damages for fraudulent concealment even if the defects did not involve unreasonable danger. *Clemens, supra* at 460-461. Contrary to the citation in *Shimmons*, this Court in *Clemens* did *not* hold that in order to establish a claim for fraudulent concealment, a plaintiff need show only that the hidden defect was known to the seller and that the purchaser had no knowledge of it.

In the present case, plaintiffs have not established the elements of silent fraud. There is no evidence of a legal or equitable duty on behalf of Relenco to disclose the history of the flooding of the subject property to plaintiffs. The documents of the sale transaction contain an "as is" clause and other statements specifically disclaimed seller representations and warranties about the condition of the property. Further, Relenco refused to prepare a seller's disclosure statement and made this refusal a part of the purchase

agreement. On the face of the seller's disclosure statement, the following appears: "Owner has never occupied this property. No representations or warranties implied as to condition. Property being sold in 'as is' condition." Moreover, plaintiffs have not set forth any evidence that they inquired into any history of flooding or water problems with the property. Therefore, this is not a situation where the buyer expressed some particularized concern or made a direct inquiry and the seller failed to fully disclose the material facts within the seller's knowledge and the buyer detrimentally relied on the misimpression. See, e.g., *Sullivan, supra; Groening, supra.* Accordingly, plaintiffs have not set forth any evidence that Relenco was under a legal (for example, a contractual) or equitable (for example, where the buyers express a particularized concern or directly inquire of the seller) duty to disclose the history of the flooding problem.

Plaintiffs also contend that highly misleading actions can support a claim of silent fraud, absent a specific inquiry. We agree with plaintiffs to the extent that a representation can be action or conduct and can be actionable as silent fraud if that action or conduct is intended to create a misimpression to the opposing party, see *Groening, supra* at 83-84, but find that no such "highly misleading actions" are present in this case such that a claim of silent fraud can be maintained. Plaintiffs state that the property was "cleaned up" and "all outward traces of the flooding were removed." Plaintiffs specifically contend that the property was painted and damaged carpet was removed. The fact that the property may have been cleaned, painted, and some carpet replaced is not sufficient evidence that the seller intended to create an

affirmative impression that there was no flooding problem with the building. Sellers will often take steps to improve the property in an effort to get more money from a potential buyer. This cannot automatically lead to the conclusion that the seller is perpetrating fraud against potential buyers. Therefore, we conclude that plaintiffs have not set forth sufficient evidence that Relenco engaged in misleading actions (representations) such that a claim of silent fraud can be maintained.

At this point, we note that plaintiffs make much of the flooding problem as being an unreasonably defective condition. As correctly held in *Clemens, supra* at 460-461, plaintiffs may recover damages for silent fraud even if the defect involved did not constitute an unreasonable danger. We believe that plaintiffs' confusion emanates from our Supreme Court's holding in *Christy v Prestige Builders, Inc*, 415 Mich 684; 329 NW2d 748 (1982). In *Christy*, our Supreme Court created two *negligence* exceptions to the general rule that caveat emptor prevails in real estate sales: (1) it is the seller's duty to disclose to the buyer any concealed condition known to the seller that involves an unreasonable danger; and (2) a seller is liable to those outside the land for a dangerous condition on the land after the sale until the buyer discovers or should have discovered it. *Id.* at 694. We emphasize that the holding in *Christy* was clearly labeled an action in negligence, but not an action in fraud.

In the present case, the trial court permitted M&D and Donmar to proceed to trial on a negligence claim based on the first exception announced in *Christy*. Ultimately, the trial court granted a directed verdict against M&D, and the jury returned a verdict of no

cause of action against Donmar. While the question whether the flooding problem constituted an unreasonably dangerous condition was crucial to a negligence-based claim brought under *Christy*, it had no bearing regarding the fraud and misrepresentation claims. We emphasize this because the holding in *Shimmons* may have resulted from a combining of the elements of a negligence claim stemming from *Christy* and the improper use of the term fraudulent concealment.[2]

The remaining claims of plaintiffs against McConkey Real Estate Company and Richard Paschack, W. B. McConkey, and Barbara Weed, in their capacity as real estate brokers and licensees, as well as the claim against the Michigan Department of Transportation were all dismissed by the trial court pursuant to MCR 2.116(C)(10). We reinstate parts IV and V of this Court's prior opinion, *M&D, Inc, supra* at 813-814, and expressly adopt its reasoning and analysis with respect to those issues. The trial court's orders granting summary disposition in favor of these defendants is affirmed.

In summary, we find that this Court in *Shimmons* did not correctly set forth the elements of a claim of silent fraud, or fraudulent concealment, and we overrule *Shimmons*. Supreme Court precedent shows that a claim of silent fraud is established when there is a suppression of material facts and there is a legal or

---

[2] For example, in *Farm Bureau Mut Ins Co v Wood*, 165 Mich App 9; 418 NW2d 408 (1987), this Court stated that the cases involved claims for the alleged fraudulent concealment of latent defects in real property, but also that the plaintiffs' causes of action were based on the principle announced in *Christy*. See also *Lorenzo v Noel*, 206 Mich App 682, 686; 522 NW2d 724 (1994). Silent fraud, or fraudulent concealment, and a *Christy*-based negligence claim involve very different elements.

equitable duty of disclosure. We emphasize that there must be some type of misrepresentation, whether by words or action, in order to establish a claim of silent fraud. In this case, plaintiffs have not established a claim of silent fraud against Relenco. The trial court did not err in granting summary disposition in favor of Relenco and McConkey with respect to the fraud claims. We affirm the judgment and orders from which plaintiffs have appealed.

Affirmed.