*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARY V HIXON,

       Plaintiff-Appellant,

v

WESTWICK SQUARE COOPERATIVE, and
MARCUS MANAGEMENT, INC,

       Defendants-Appellees.

UNPUBLISHED
March 25, 2021

No. 351825
Wayne Circuit Court
LC No. 18-013564-CZ

Before: STEPHENS, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff Gary Hixon appeals as of right the circuit court's order granting defendant Westwick Square Cooperative's and defendant Marcus Management's motion to dismiss his second amended counterclaim. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Westwick Square Cooperative (hereinafter "WSC") is a non-profit housing cooperative. In 1976, Ernestine Hixon was approved for membership in WSC and accordingly resided in a particular two-bedroom dwelling unit until her death on December 9, 2016. Gary Hixon (hereinafter "Hixon") sought to assume her right to occupy the dwelling unit but failed to comply with the applicable WSC bylaws, which required the submission of application materials within 60 days of a member's death. Consequently, in June 2017, WSC filed a complaint in district court to recover possession of the dwelling unit; the complaint was pled against "Ernestine Hixon (Deceased), AND ALL OTHER OCCUPANTS." Hixon responded with a "counterclaim" seeking damages in excess of $25,000. The counterclaim listed 12 separate claims ranging from unjust enrichment to violation of Fair Debt Collection Practices Act, 15 USC 1692 *et seq*.[1]

---

[1] We refer to each of Hixon's pleadings as a "counterclaim" because that is the title that the parties have used throughout this case.

In December 2017, the district court entered a judgment of possession in favor of WSC. The district court also removed Hixon's counterclaim to the circuit court because the request for damages was beyond its amount-in-controversy jurisdictional limit. See MCL 600.8301(1). Further, Hixon appealed the judgment of possession to the circuit court. The appeal was assigned Case No. 17-016703-AV, and the counterclaim was assigned Case No. 18-013564-CZ.

In Case No. 17-016703-AV, the circuit court reversed the district court and remanded to that court for further proceedings. WSC appealed that ruling to this Court, and we peremptorily reversed by order and remanded to the district court for a judgment of possession in favor of WSC. *Westwick Square Cooperative v Hixon*, unpublished order of the Court of Appeals, entered September 27, 2018 (Docket No. 343842).

Meanwhile, in Case No. 18-013564-CZ, Hixon filed his first amended counterclaim against WSC and Marcus Management in February 2019.[2] He brought 10 claims against these opposing parties, each of which he somehow related to the overarching allegation that they "knowingly misrepresent[ed] material facts continually to the Court."

In July 2019, Hixon filed his second amended counterclaim against WSC and Marcus Management, bringing 14 distinct claims. The claims were as follows: Count I (concert of action); Count II (civil conspiracy); Count III (fraud and misrepresentation); Count IV (exemplary damages); Count V (malicious prosecution); Count VI (quiet title); Count VII (breach of contract); Count VIII (negligent infliction of emotional distress); Count IX (intentional infliction of emotional distress); Count X (declaratory judgment); Count XI (abuse of process); Count XII (conversion); Count XIII (violation of anti-lockout statute); and Count XIV (unjust enrichment). In support of these claims, Hixon listed about 16 pages of allegations indicating that WSC, Marcus Management, and their counsel had engaged in a scheme to illegally evict and humiliate him by repeatedly and intentionally misleading the courts. He sought damages in excess of $25,000 and a variety of equitable relief.

In August 2019, WSC and Marcus Management moved to dismiss the second amended counterclaim pursuant to MCR 2.116(C)(7) (res judicata) and (C)(8) (failure to state a claim). They argued that all 14 claims were barred by res judicata because "Hixon did or could have resolved the issues raised in the above Second Amended Counterclaims in the prior Court proceedings," i.e., the district-court summary proceedings for possession of the premises and the accompanying appeals. They alternatively argued that Counts I, II, IV, V, VIII, IX, XII, XIII, and XIV should be dismissed pursuant to MCR 2.116(C)(8) because each of those claims was somehow legally deficient.

On September 27, 2019, the circuit court entered an order granting WSC's and Marcus Management's motion to dismiss. The order stated as follows:

---

[2] Marcus Management is WSC's property management agent.

This motion is granted for the reasons set forth in said motion. This Court adopts the rationale set forth in Plaintiff/Counter-Defendant's brief. The second amended counterclaim is dismissed with prejudice.

Hixon now appeals.

## II. SUBJECT-MATTER JURISDICTION

Hixon first argues that the district court lacked jurisdiction over the summary proceedings because his original counterclaim for monetary damages was beyond its jurisdictional limits. We disagree.

"A party may attack subject-matter jurisdiction at any time, and a proven lack of subject-matter jurisdiction renders a judgment void." *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012). Moreover, "the lack of subject-matter jurisdiction may be collaterally attacked[.]" *Id*. at 229. "The underlying question whether a court had subject-matter jurisdiction is a question of law that this Court reviews de novo." *Clohset v No Name Corp*, 302 Mich App 550, 559; 840 NW2d 375 (2013).

"Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *In re Warshefski*, 331 Mich App 83, 88; 951 NW2d 90 (2020) (quotation marks and citations omitted). "Stated another way, it is the court's power to preside over the type or kind of case pending, not the power to determine the particular cause of action or particular facts before the court." *Id*.

"The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). Thus, the circuit court possesses jurisdiction in civil actions when the amount in controversy exceeds $25,000. See MCL 600.605. In addition, there are specific statutes and court rules governing summary proceedings to recover possession of premises, which are defined as actions "to recover possession of premises and to obtain certain ancillary relief as provided by this chapter and by court rules adopted in connection therewith." MCL 600.5701(a).[3] Pertinent to this case, MCL 600.5704 provides, in relevant part, as follows:

> The district court, municipal courts and the common pleas court of Detroit have jurisdiction over summary proceedings to recover possession of premises under this chapter.

The district court's jurisdiction over such proceedings is reinforced by MCL 600.8302(1) and (3):

---

[3] The statutes are located in chapter 57 of the Revised Judicature Act (RJA), MCL 600.5701 *et seq*.

(1) In addition to the civil jurisdiction provided in sections 5704 and 8301, the district court has equitable jurisdiction and authority concurrent with that of the circuit court in the matters and to the extent provided by this section.

\* \* \*

(3) In an action under chapter 57, the district court may hear and determine an equitable claim relating to or arising under chapter 31, 33, or 38 or involving a right, interest, obligation, or title in land. The court may issue and enforce a judgment or order necessary to effectuate the court's equitable jurisdiction as provided in this subsection, including the establishment of escrow accounts and receiverships.

MCL 600.5739(1) recognizes that in cases involving a dispute over possession of premises, there may also be related monetary claims such as a claim for unpaid rent:

Except as provided by court rules, a party to summary proceedings may join claims and counterclaims for money judgment for damages attributable to wrongful entry, detainer, or possession, for breach of the lease or contract under which the premises were held, or for waste or malicious destruction to the premises. The court may order separate summary disposition of the claim for possession, without prejudice to any other claims or counterclaims. A claim or counterclaim for money judgment shall not exceed the amount in controversy that otherwise limits the jurisdiction of the court.

MCR 4.201 seemingly implements MCL 600.5739(1) and governs the procedure for when a claim or counterclaim for monetary damages exceeds the jurisdictional limit of the district court. In 2017, MCR 4.201(G)(2) provided as follows:

*Removal.*

(a) A summary proceedings action need not be removed from the court in which it is filed because an equitable defense or counterclaim is interposed.

(b) If a money claim or counterclaim exceeding the court's jurisdiction is introduced, the court, on motion of either party or on its own initiative, shall order removal of that portion of the action to the circuit court, if the money claim or counterclaim is sufficiently shown to exceed the court's jurisdictional limit.[4]

---

[4] Presently, MCR 4.201(G)(2)(b) provides as follows:

If a money claim or counterclaim exceeding the court's jurisdiction is introduced, the court, on motion of either party or on its own initiative, shall order, in accordance with the procedures in MCR 4.002, removal of that portion of the

In addition, MCL 600.5750 provides, in relevant part, as follows:

> The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under this chapter does not merge or bar any other claim for relief . . . .

"This provision evidences the Legislature's intent that summary proceedings for possession of property be handled expeditiously." *JAM Corp v AARO Disposal, Inc*, 461 Mich 161, 168; 600 NW2d 617 (1999). "[T]he Legislature took these cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obligated to fasten all other pending claims to the swiftly moving summary proceedings." *Id*. at 168-169.

We conclude that the district court here possessed jurisdiction over the summary proceedings. MCL 600.5704, as quoted above, provides that "[t]he district court . . . [has] jurisdiction over summary proceedings to recover possession of premises[.]" See also MCL 600.8302(1), (3). This language is clear and vests the district court with jurisdiction. Moreover, as this Court suggested in *Ames v Maxon*, 157 Mich App 75; 403 NW2d 501 (1987), overruled in part by *Mich Nat'l Bank v Cote*, 451 Mich 180; 546 NW2d 247 (1996),[5] "[i]t would appear from [MCL 600.5704] that the circuit court does not have jurisdiction over summary proceedings such as land contract forfeitures." *Ames*, 157 Mich App at 81. Thus, had the district court removed the entire action to circuit court, as Hixon suggests should have occurred, *that* removal may have resulted in a fatal lack of jurisdiction. The district court instead followed the applicable court rule, MCR 4.201(G)(2)(b), and removed only Hixon's counterclaim for damages in excess of $25,000. The district court complied with all applicable statutes and court rules in this regard, and it did not lack jurisdiction.

Hixon's arguments to the contrary are meritless and may be disposed of briefly. First, Hixon argues that the district court lacked jurisdiction because he opened an estate in probate court, and Ernestine Hixon's interest in the dwelling unit was part of her estate. Thus, the probate court, not the district court, possessed jurisdiction. See MCL 700.1302(a) (stating that the probate court "has exclusive legal and equitable jurisdiction of . . . [a] matter that relates to the settlement of a deceased individual's estate"). This argument misses the mark because summary proceedings to recover possession of premises implicated the district court's in-rem jurisdiction. See *Cohen v Outlet Market Co*, 311 Mich 327, 333; 18 NW2d 843 (1945) (describing such an action as "a proceeding in rem"). See also MCL 600.751 ("The courts of record of this state shall have jurisdiction over land situated within the state whether or not the persons owning or claiming interests therein are subject to the jurisdiction of the courts of this state."). Thus, WSC was not required to proceed against her estate in probate court to recover the dwelling unit.

Second, Hixon argues that the district court lacked jurisdiction because he filed a counterclaim seeking damages in excess of $25,000. It is certainly true that such a claim is beyond

---

action to the circuit court, if the money claim or counterclaim is sufficiently shown to exceed the court's jurisdictional limit.

[5] The overruled holding of *Ames* is not relevant here.

the district court's jurisdictional amount-in-controversy limitation. See MCL 600.8301(1). And ordinarily, when a counterclaim is filed in district court that exceeds that court's jurisdictional limits, the district court transfers the entire action to circuit court. See MCR 4.002(A)(1). However, as noted above, there are specific statutes and court rules concerning summary proceedings to recover possession of premises, and those statutes and court rules allow for bifurcation of the action as occurred here. We therefore conclude that the district court possessed jurisdiction.[6]

## III. FRAUD ON THE COURT

Hixon argues that the circuit court erred by disposing of his allegations of fraud on the court without discovery or an evidentiary hearing. We disagree.

"In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." MCR 2.112(B)(1). The decision whether to hold an evidentiary hearing on allegations of fraud on the court is reviewed for an abuse of discretion. See *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). Moreover, this Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(8). See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "[A] motion for summary disposition under MCR 2.116(C)(8) must be decided on the pleadings alone and . . . all factual allegations must be taken as true." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 154; 934 NW2d 665 (2019).

"[A] second suit for fraud, based on perjury ('intrinsic fraud'), may not be filed against a person involved in a first suit, if the statutes and court rules provide an avenue for bringing the fraud to the attention of the first court and asking for relief there." *Daoud v De Leau*, 455 Mich 181, 203; 565 NW2d 639 (1997). "[O]ur Supreme Court [has] declined to recognize an independent action at law to recover damages for intrinsic fraud." *Sprague v Buhagiar*, 213 Mich App 310, 314; 539 NW2d 587 (1995). On the other hand, "[t]he fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment, and must be such as prevents the losing party from having an adversary trial of the issue." *Id*. at 313. Such fraud is "extrinsic fraud." See *id*. Regardless of the distinction between intrinsic and extrinsic fraud, "fraud on the court cannot exist in an adversary proceeding where the relevant facts are known by both parties[.]" *Matley v Matley* (*On Remand*), 242 Mich App 100, 104; 617 NW2d 718 (2000).

MCR 2.612(C) provides, in relevant part, as follows:

**Grounds for Relief From Judgment**.

---

[6] Lastly, while Hixon raises an issue of due process as it relates to the purported lack of jurisdiction, that issue is not properly presented for review because it was not reflected in his statement of questions presented. See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

* * *

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

* * *

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

Hixon's allegations of fraud in his second amended counterclaim are somewhat difficult to track and seem to oscillate between allegations that he was personally misled by WSC and Marcus Management and allegations that they committed fraud on the court. The former would seem to constitute the common-law tort of fraud,[7] whereas the latter would seem to constitute intrinsic or extrinsic fraud, which simply entitles a party to set aside the judgment. See *Sprague*, 213 Mich App at 314. For the purposes of our analysis, given that claims of fraud must be pleaded with specificity, MCR 2.112(B)(1), we will ignore the generalized allegations in the second amended counterclaim and those allegations that could not plausibly entitle him to relief, and address only those allegations that refer to specific facts and are not clearly frivolous.

First, Hixon alleges that WSC sent him a letter dated January 19, 2017 with "illegal terms." That letter, which was attached to the second amended counterclaim as Exhibit 1, states, in relevant part, as follows:

As provided in the Cooperative's Bylaws, the death of the member of record is officially the same as filing of a 60 Day Notice of Withdrawal and move out of the Cooperative. Given these requirements, you will be required to contact the Westwick Office within 30 days to review the next step in processing the passing members' [sic] interest in the membership share and equity refund.

---

[7] The elements of common-law fraud are as follows:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M & D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).]

According to Hixon, that letter "is a knowingly misrepresentation of material fact by WSC." Hixon is correct that the letter was at least misleading to the extent that it suggested that he had 30 days from January 19, 2017 to submit an application. In fact, he only had until February 7, 2017. Regardless, the letter can hardly be characterized as intrinsic fraud, much less extrinsic fraud, because it did not deceive the court in any respect. Further, Hixon cannot credibly assert that he was personally deceived and harmed by the letter because he *did* timely attempt to preserve his rights through his February 3, 2017 affidavit, thus showing that he was aware of the February 7, 2017 deadline for submitting an application. Thus, Hixon is not entitled to relief because he received this letter.

Second, Hixon alleges that a January 20, 2017 email drafted by Ms. Beicher (the assistant manager for WSC) falsely stated: "[A]s you do not fit the family size requirement for a 2 bedroom unit, you will need to petition the Board of Directors in writing to consider your application for membership." According to Hixon, the bylaws do not reference such a family-size requirement. This is a correct observation, but even if there was no other rule or regulation concerning family size, Hixon would not be entitled to relief because he received this email. As with the previous allegation of fraud, the email cannot be characterized as intrinsic or extrinsic fraud because it did not deceive the court in any respect. And Hixon did not allege that he relied on the email to his detriment.

Third, Hixon alleges that Ms. Garcia (the site manager for WSC) committed fraud on the court in the following respect. Ms. Garcia sent a letter to Hixon dated February 21, 2017, repeating the information reflected in the January 19, 2017 letter but did not provide any application materials with the letter. However, during the district-court proceedings, WSC introduced Ms. Garcia's personal copy of the letter, and that copy had a handwritten note at the bottom stating, "enclosed application paperwork." The original letter received by Hixon did not have that handwritten note. According to Hixon, the handwritten note was added by Ms. Garcia to defraud the court by falsely suggesting that the letter she sent him included the required application materials, when in fact it did not. Ms. Garcia was deposed at length about the discrepancy, and she testified that she added the handwritten note for her own records. She also testified that she actually sent the application materials to Hixon with the letter.

This allegation of fraud is the heart of Hixon's second amended counterclaim. Nonetheless, it is meritless for three reasons. First, the fact that Ms. Garcia included a handwritten note on the letter for her own records but did not include that note on the letter sent to Hixon hardly shows fraudulent intent. Second, even if she did intend to defraud the court, "fraud on the court cannot exist in an adversary proceeding where the relevant facts are known by both parties[.]" *Matley*, 242 Mich App at 104. And Hixon must have known whether the letter that he actually received from Ms. Garcia included the handwritten note and required application materials. This allegation of fraud on the court is therefore insufficient. Third, even if the allegation was sufficient, it would only constitute intrinsic fraud, see *Daoud*, 455 Mich at 203, and Hixon's avenue for relief is to file a motion for relief from judgment under MCR 2.612(C) in the district court.

We therefore conclude that the allegations of fraud set forth in the second amended counterclaim are best characterized as intrinsic fraud. Because Hixon's avenue for relief is to move the district court to set aside the judgment of possession, see MCR 2.612(C), the circuit court did not abuse its discretion by refusing to afford him discovery or an evidentiary hearing.

## IV. RES JUDICATA

Hixon argues that the circuit court erred in dismissing his second amended counterclaim on the basis of res judicata. We agree in part.

A motion for summary disposition on the basis of res judicata is brought under MCR 2.116(C)(7). *King v Munro*, 329 Mich App 594, 598; 944 NW2d 198 (2019). "When it grants a motion under MCR 2.116(C)(7), a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Id*. at 599 (quotation marks and citation omitted). The applicability of res judicata is a question of law that this Court reviews de novo. *Ditmore v Michalik*, 244 Mich App 569, 574; 625 NW2d 462 (2001). This Court also reviews de novo a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(7). See *King*, 329 Mich App at 598.

"Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). "A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Id*. Michigan courts "have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

Ordinary principles of res judicata do not apply with respect to claims that could have been litigated, but were not, in summary proceedings. See *JAM Corp*, 461 Mich at 168-169 ("Plainly the Legislature took these cases outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings."). However, res judicata does apply with respect to claims or issues that were actually litigated in summary proceedings. See *Sewell v Clean Cut Mgmt, Inc*, 463 Mich 569, 576-577; 621 NW2d 222 (2001) ("[W]here the district court judgment and writ have not been reversed or vacated, they are conclusive on the narrow issue whether the eviction was proper.").

WSC and Marcus Management argue that all 14 claims in the second amended counterclaim are barred by res judicata because they relate to the underlying issue of whether Hixon was entitled to possession of the dwelling unit, an issue that was actually decided by the district court. Hixon, on the other hand, argues that his claims are distinct from the narrow issue that was actually decided by the district court, so res judicata does not apply at all.

Initially, we question whether res judicata is the proper doctrine to invoke. That doctrine may apply when there are two separate actions. See *Dart*, 460 Mich at 586. And MCR 2.101(B) provides that "[a] civil action is commenced by filing a complaint with a court." Here, the action was commenced when WSC filed its complaint for possession in district court. Removal of a counterclaim to circuit court does not clearly appear to be tantamount to "filing a complaint with a court." Moreover, MCR 4.201(G)(2)(b) provided that when a claim or counterclaim for monetary damages exceeded the jurisdiction of the district court, that court must order "removal of that portion of the action to the circuit court." Arguably, the language "that portion of the action" contemplates only *one* action that is simultaneously occurring in two separate courts.

Further, res judicata applies to "a subsequent action." See *Dart*, 460 Mich at 586. Where the original counterclaim was simply brought within the summary-proceedings action and then removed to circuit court, it is odd to characterize the counterclaim as "a subsequent action." However, because the parties only dispute res judicata, we will assume that it is the proper doctrine to invoke in this instance.[8]

After a review of the second amended counterclaim, we conclude that the following two claims are barred by res judicata because the judgment of possession is "conclusive on the narrow issue" of whether WSC is entitled to possession of the dwelling unit. See *Sewell*, 463 Mich at 577. First, Count VI (quiet title) is barred by res judicata because it alleges that Hixon is the "rightful holder and possessor of the subject Premises," which is plainly contrary to the judgment of possession. Second, Count VII (breach of contract) is barred by res judicata because it alleges that WSC and Marcus Management "breeched [sic] . . . the Occupancy Agreement, Subscription Agreement and the applicable Bylaws." Again, the judgment of possession is conclusive on the issue of whether Hixon or WSC was entitled to possession of the premises on the basis of the applicable governing documents. The remaining 12 claims are not barred by res judicata because they were not actually litigated in the summary proceedings. See *JAM Corp*, 461 Mich at 168-169. Simply put, the circuit court erred by applying ordinary principles of res judicata to these proceedings. See *id*.

For these reasons, we conclude that the circuit court erred by dismissing the entirety of the second amended counterclaim on the basis of res judicata. Rather, only Counts VI and VII were barred by res judicata.

## V. ALTERNATE GROUND FOR AFFIRMANCE

Having not fully prevailed on the res-judicata argument, WSC and Marcus Management alternatively argue that the circuit court properly dismissed most of the claims under MCR 2.116(C)(8). We agree.

In the circuit court, WSC and Marcus Management argued that the following nine claims should be dismissed pursuant to MCR 2.116(C)(8): Count I (concert of action); Count II (civil conspiracy); Count IV (exemplary damages); Count V (malicious prosecution); Count VIII (negligent infliction of emotional distress); Count IX (intentional infliction of emotional distress);

---

[8] We note that if this case is deemed as involving a single action, the same general principles would apply. "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Adm'r v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260. Here, this Court previously determined that WSC was entitled to possession of the dwelling unit because Hixon failed to comply with the bylaws. This determination was, and is, binding on the district court, the circuit court, and this Court. Therefore, under the law-of-the-case doctrine, none of these courts may now decide that Hixon is entitled to possession of the dwelling unit.

-10-

Count XII (conversion); Count XIII (violation of anti-lockout statute); and Count XIV (unjust enrichment). Although Hixon nominally argues that none of his 14 claims should have been dismissed under MCR 2.116(C)(8), he does not actually address the authorities raised by WSC and Marcus Management in their motion to dismiss or brief on appeal. Therefore, his issue concerning MCR 2.116(C)(8) is abandoned as to these claims. See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

The remaining five claims are as follows: Count III (fraud and misrepresentation); Count VI (quiet title); Count VII (breach of contract); Count X (declaratory judgment); and Count XI (abuse of process). We have already concluded that Counts VI and VII are barred by res judicata. And the outstanding three claims are either legally insufficient or simply not cognizable.

With respect to Count III (fraud and misrepresentation), plaintiff alleges as follows:

¶ 77. Defendant [sic] intentionally made false representations of material facts to [plaintiff], as set forth in the preceding paragraphs.

¶ 78. Defendants' representations were false when they were made.

¶ 79. Defendants knew that its [sic] representations were false when they were made or it [sic] made them recklessly, without knowing whether they were true.

¶ 80. Defendants intended that [plaintiff] rely on the representations.

¶ 81. [Plaintiff] relied on Defendants' false misrepresentations, in defending the various legal proceedings.

¶ 82. As a result of Defendants' fraudulent misrepresentations, [plaintiff] has suffered substantial injuries and damages.

This is a peculiar claim. The language is consistent with the common-law tort of fraud. See *M & D*, 231 Mich App at 27. However, virtually all of the allegations in the second amended counterclaim concerning fraud relate to alleged conduct by WSC and Marcus Management in defrauding the court. To the extent that Hixon sought to state a claim for fraud upon the court, that claim fails because, as explained previously, all of the allegations in this regard are best characterized as intrinsic fraud. To the extent that Hixon sought to state a claim for common-law fraud, that claim also fails because, as explained previously, he cannot show any reliance to his detriment upon the false representations.

With respect to Count X (declaratory judgment), plaintiff alleges that he "is entitled to declaratory relief in that Defendant's [sic] conduct is unlawful." That claim fails because a declaratory judgment is merely a remedy that a court may provide to a successful litigant. See *Shavers v Kelley*, 402 Mich 554, 588; 267 NW2d 72 (1978). It is not an independent claim.

With respect to Count XI (abuse of process), Hixon alleges that "[d]efendants abused the civil process by using it for their ulterior motive or purpose to cause vexation, trouble, embarrassment . . . as retaliation for [his] civil/criminal exercise of his legal remedies," and further,

that the abuse of process "was improper since [d]efendants knew, or should have known, that the material fraud/perjury upon the Court, and such conduct would cause damage and injury to [him]." "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc*, 412 Mich 1, 30; 312 NW2d 585 (1981). "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure[.]" *Vallance v Brewbaker*, 161 Mich App 642, 646; 411 NW2d 808 (1987). For example, abuse of process occurs "where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms." *Id.* Here, Hixon has not alleged that WSC and Marcus Management availed themselves of a proper legal procedure. Rather, he alleges precisely the opposite—that WSC and Marcus Management, through their agents, committed fraud and perjury. Count XI (abuse of process) therefore fails.

We recognize that WSC and Marcus Management do not raise the above arguments with respect to Counts III, X, or XI. However, "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Dep't of Trans*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Here, although the circuit court erred by dismissing the entire second amended counterclaim on the basis of res judicata, it nonetheless reached the correct result. It is therefore appropriate to dispose of these claims on an independent basis, particularly where the claims themselves are meritless on the face of the second amended counterclaim.[9]

## VI. CONCLUSION

The circuit court did not err by dismissing Hixon's second amended counterclaim. Accordingly, we affirm.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[9] Finally, we note that Hixon's argument that the circuit court did not provide a basis for its dismissal is meritless. The circuit court's order stated that it had "adopt[ed] the rationale set forth in Plaintiff/Counter-Defendant's brief."