*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PIONEER STATE MUTUAL INSURANCE
COMPANY,

UNPUBLISHED
March 11, 2021

Plaintiff-Appellee,

v

No. 348917
Calhoun Circuit Court
LC No. 2018-000311-CZ

ANDREW LYNN FRANTZ,

Defendant-Appellant.

Before: STEPHENS, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Andrew Lynn Frantz (Defendant) appeals as of right the circuit court's declaratory judgment stating that the policy of insurance issued by Pioneer State Mutual Insurance Company (Plaintiff) to defendant (Policy Number: PA00232999) was void *ab initio* and that plaintiff had no obligation to defend or indemnify defendant in an underlying tort suit. For the reasons stated below, we affirm in part, reverse in part, vacate in part, and remand.

## I. BACKGROUND

Defendant's daughter, Abbey, filed a claim against the plaintiff insurer for personal injury protection (PIP) benefits after she was involved in an accident in November 2015, when she was a passenger in a vehicle insured under a policy between plaintiff and defendant. A friend of Abbey's, Austin Cable, was the vehicle driver. Abbey made a claim for PIP benefits under defendant's insurance and separately sued Cable and defendant for negligent operation of the vehicle. Defendant requested plaintiff provide him with a defense and indemnification against the tort suit; plaintiff had done so, under a reservation of rights. It was during plaintiff's investigation of the PIP claim and the underlying tort suit that it discovered that Abbey was not a named driver under the insurance policy.

That discovery precipitated plaintiff's complaint for a declaratory judgment that asked the trial court: (1) to declare the insurance policy void ab initio and that plaintiff had no obligation to defendant or to indemnify defendant in the underlying tort suit; and (2) grant it rescission based

-1-

on defendant's misrepresentation of the number of drivers driving the insured vehicles. After a bench trial, the trial court granted rescission.

The following facts were undisputed. Defendant first applied for insurance with plaintiff in August 2014 for four vehicles: a 2010 Ford Fusion, 2011 Honda CR-V, 2004 Ford F150, and 2006 Lexus RX 400 Hybrid. In response to the application request to list the names of all household and non-household drivers of all the vehicles, defendant identified himself, his wife, Shelly Frantz (Shelly), and their son, Andrew Frantz (Andrew). The policy was renewed in August 2015 with the same number of vehicles and drivers.

## II. DECLARATORY JUDGMENT

### A. STANDARD OF REVIEW

We review de novo a trial court's decision in a declaratory judgment action. *Flanders Indus, Inc v Michigan*, 203 Mich App 15, 20; 512 NW2d 328 (1993). We review its factual findings for clear error. *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 579; 939 NW2d 705 (2019) (citation omitted). "To the extent a factual determination turns on the credibility of a witness, this Court generally defers to the trial court." *Andrusz v Andrusz*, 320 Mich App 445, 455; 904 NW2d 636 (2017).

We also review de novo issues of contract interpretation. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

We review the trial court's decision to grant or deny the remedy of rescission for an abuse of discretion. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396,405; 952 NW2d 586 (2020). "The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019).

### B. MISREPRESENTATION

Defendant first argues that it was error for the trial court to grant plaintiff rescission on the basis of innocent misrepresentation when plaintiff failed to show defendant's intent to defraud. We disagree.

### 1. INNOCENT MISREPRESENTATION

"A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). Contrary to defendant's contention, innocent misrepresentation is a proper basis upon which to grant rescission "without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016) (quotation marks and citation omitted). "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise

the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). "Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *21st Century Premier Ins Co*, 315 Mich App at 446 (quotation marks and citation omitted). "It is unnecessary to prove that the party making the representation had knowledge that it was false." *Roberts v Saffell*, 280 Mich App 397, 404; 760 NW2d 715 (2008). "[C]ontrary to fraudulent misrepresentation, a plaintiff asserting an innocent misrepresentation claim need not prove that the defendant intended to deceive the plaintiff into relying on the false or misleading representation." *Id*. at 405.

The trial court did not err in finding that defendant misrepresented the number of drivers on the application for insurance when he failed to disclose Abbey as the driver of the CR-V. Defendant answered twice, once in the application and again in the supplemental policy questions, that there were no drivers outside the household using the insured vehicles. Defendant contends that those responses were not false at the time of signing the application, because Abbey was not driving the CR-V when she lived outside the home. The record supports a contrary conclusion. Defendant testified that at the time he acquired the CR-V in March 2014, he intended it to be for Abbey. He testified that he was the primary driver of the F150 and only drove the CR-V if something was wrong with his vehicle, which he estimated happened approximately three times. Of the 55,000 miles that were driven on the CR-V after defendant acquired title, defendant estimated to having only driven 300 of them. Abbey testified that she drove the CR-V whenever she wanted, drove it back and forth to work, and had her own set of keys. Thus, the trial court's fact finding that Abbey was a driver of the CR-V as of the signing of the 2014 application for insurance was not clearly erroneous.

The record also supports the trial court's finding that the plaintiff detrimentally relied on the defendant's insurance application which omitted Abbey as a driver. Plaintiff's underwriter testified that insurance rates were calculated based upon the number of drivers, their ages, driving records, how they used the vehicle, and how far the vehicles were driven. Abbey, it was disclosed, had numerous traffic citations. The plaintiff rated the insurance risk with incomplete information and the defendant ultimately benefitted from his failure to disclose Abbey's status as a driver whether in the household or outside of it. Defendant argues that he did not have the intent to deceive plaintiff; it was his testimony that he honestly believed he was insuring vehicles and that he did not believe he was required to disclose Abbey's access to and use of the CR-V because she did not live in the household and instead resided with her boyfriend and his father. We note that there was evidence to the contrary because the boyfriend's father denied that assertion. However, since the plain language of the application asked for disclosure of both household and non-household drivers, the failure to list Abbey was false regardless of her residence because she was in fact a regular driver. Defendant's intent in making the misrepresentation was irrelevant to establishing innocent misrepresentation. We find no error.

## 2. FRAUDULENT MISREPRESENTATION

The court also found that rescission was justified under a theory of fraudulent misrepresentation. To prove fraudulent misrepresentation, plaintiff must show:

-3-

(1) the defendant made a material representation; (2) the representation was false; (3) at the time the defendant made the representation, the defendant knew the representation was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M & D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).]

"A misrepresentation on an insurance application is material if, given the correct information, the insurer would have rejected the risk or charged an increased premium." *Montgomery v Fid & Guar Life Ins Co*, 269 Mich App 126, 129; 713 NW2d 801 (2005). This is because "[a]n insurer's evaluation of the likelihood of a factor increasing the risk of loss affects its decision to enter into a contract." *Id*.

As noted above, the failure to disclose Abbey's use of the CR-V was a significant factor in rating the policy. Her use of the vehicle was known by the defendant and his list of "all drivers" was thus, inaccurate when he produced the application in 2014. Defendant testified that he would have disclosed Abbey's existence if his insurance agent had asked him about the primary driver of the CR-V. There was evidence that the agent did in fact make that inquiry. The representative from the insurance agency testified that the habit, practice, and routine of their agents was to have the agent ask direct questions of the applicant on the information required in the application which included the names of all household and non-household drivers of each insured vehicle. The court resolved the factual dispute regarding whether the defendant was asked about all drivers and knowingly omitted Abbey against the defendant based upon competent evidence. We defer to the trial court's determination of credibility. Plaintiff also had the burden to establish that the intentional misrepresentation by omission was made with the intent that the insurer relied on the omission. While there was no direct evidence on the defendant's intent, the trial court did not clearly err in concluding that the defendant had the requisite intent based upon circumstantial evidence. *Houston v Mint Group, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2021), slip op at 10 ("But intent can plainly be established by conduct and circumstantial evidence."). See *Krolik v Lang*, 187 Mich 286, 291; 153 NW 686 (1915) ("It is an elementary rule that much latitude may be allowed in admission of circumstantial evidence in cases where fraud is charged[.]") The defendant's argument that he never read the policy application that he signed is of no defense either, as he is charged with knowledge of its terms and his signature attested to the fact that he represented the information contained in the policy to be accurate.[1] As we noted above, there is

---

[1] See *Montgomery v Fid & Guar Life Ins Co*, 269 Mich App 126, 130; 713 NW2d 801 (2005) (internal citations omitted) ("A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty. Regardless of who actually completed the application, plaintiff and decedent both signed the authorization, attesting to the completeness and truth of the answers, after the application was completed."). In this case, the following paragraph directly preceded defendant's signature on the application:

record support for the conclusion that the plaintiff did rely on the misrepresentations to its economic detriment.

Accordingly, the trial court did not err in finding that the policy between plaintiff and defendant was void *ab initio* due to the fraudulent manner in which it was entered and that plaintiff was entitled to seek a declaratory judgment rescinding the insurance policy on the bases of innocent and fraudulent misrepresentation.

## B.  RESCISSION

Defendant next argues that rescission was not the appropriate remedy after finding that the insurance policy was void *ab initio*.  We agree with this argument, in part.

"Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party...."  5A Michigan Civil Jurisprudence, Contracts, § 44, p. 215.  "For that reason, an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018).  Here, the insurance policy contained a provision for fraud that read:

> The entire policy will be void if, in obtaining or maintaining this  policy,  or whether before or after a loss, you, an "insured", a "family member" or any other person seeking coverage has:
>
> 1.  Intentionally concealed or misrepresented  any material fact or circumstance;
>
> 2.  Engaged in fraudulent conduct; or
>
> 3.  Made false statements; relating to this insurance.

"[I]t is well settled that an insurer is entitled to rescind a policy *ab initio* on the basis of a material misrepresentation made in an application for no-fault insurance." *21st Century Premier Ins Co*, 315 Mich App at 445-446.  Rescission however, is an equitable remedy that is granted as a matter of grace in the sound discretion of the trial court; the remedy is not as a matter of right. *Bazzi*, 502 Mich at 409.  In other words, "[t]he fact that the rescission of a contract is an available remedy

---

WARNING: MISREPRESENTATION MAY VOID COVERAGE

The foregoing is a complete and accurate representation of the information sought by this application. I understand that if the foregoing is incomplete or incorrect or if I fail to provide material rating or eligibility information as requested at any future time, coverage may be terminated. Any questions I have been unable to accurately answer, have been so noted and I authorize Pioneer to obtain all available reports of driving history.

I have read the above application and I declare that to the best of my knowledge and belief that all of the foregoing statements are true.

does not lead to the conclusion that it is required". 12A CJS, Cancellation of Instruments, § 11, p. 507. For example, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable." *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). Rather, *Bazzi* instructs that "[w]hen a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." 502 Mich at 410 (citation and quotation marks omitted). Here, plaintiff sought and was granted two forms of relief: (1) rescission, and (2) a declaration that it had no obligation to defend or indemnify defendant. On remand, the trial court must discern whether equity entitles plaintiff to be released from its contractual obligation to defend and indemnify defendant.

*Bazzi*'s holding further instructed that when an insurance company seeks rescission of an insurance policy for which a third-party claim exists, the trial court is also required to determine whether rescission of the insurance policy is available for the third-party claim. 502 Mich at 411-412. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409-410. "Unless rescinded, a voidable contract imposes on the parties the same obligations as if it were not voidable." 1 Williston, Contracts (4th ed), § 1:20, p 76. When two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss...." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 31; 331 NW2d 203 (1982). "[W]here one of two innocent parties must suffer by the wrongful act ... of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." *Zucker v Karpeles*, 88 Mich 413, 430; 50 NW 373 (1891). "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." *Id*. Here, the trial court did not undertake analysis to determine the effect of rescission on Abbey's PIP claim under the insurance policy.

Consequently, the declaratory judgment voided the policy *ab initio* making it so that plaintiff also had no obligation to Abbey. Accordingly, we remand this matter to the trial court so that it can determine whether rescinding the insurance policy as between plaintiff and Abbey would be equitable.

We reject defendant's argument that the proper remedy in this case is to allow him to pay plaintiff the difference in the premium had Abbey been included on the policy which amounted to approximately $380. In support of this solution, defendant relies on the following insurance policy provision:

**CHANGES**

A.    This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B.    If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1.    The  number, type or use classification of insured vehicles;

2.    Operators using insured vehicles;

3.  The place of principal garaging of insured vehicles;

4.  Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

Defendant's reliance on this provision is misplaced. Plainly read, the provision applies to changes made during the policy term. The provision is inapplicable where defendant's failure to disclose occurred during the application for insurance. Further, defendant failed to report Abbey at any time during the policy period so that an increase in the premium could have taken effect.

We affirm the trial court's findings that defendant's fraudulent misrepresentation in the application for insurance made the policy void *ab initio*. We reverse the trial court's declarations that the plaintiff had no obligation to indemnify or defend defendant in the underlying tort suit and remand for the trial court to conduct a hearing under *Bazzi* as to defendant's rights for defense and indemnification. We vacate the trial court's order rescinding the insurance policy and remand the issue of rescission to the trial court for it to balance the equities concerning Abbey's claim. We do not retain jurisdiction.


/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Jane M. Beckering