*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOMINIQUE BELLAMY, Personal Representative
of the ESTATE OF ERICKA BELLAMY,

UNPUBLISHED
November 17, 2025
9:47 AM

Plaintiff-Appellant,

v

No. 371648
Wayne Circuit Court
LC No. 23-000339-NF

CITIZENS UNITED RECIPROCAL EXCHANGE,
doing business as CURE AUTO INSURANCE,

Defendant-Appellee.

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In this action to recover personal injury protection ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff, Dominique Bellamy, as Personal Representative of the Estate of Ericka Bellamy, appeals by right the order granting summary disposition in favor of defendant, Citizens United Reciprocal Exchange, doing business as Cure Auto Insurance. We affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the death of the decedent, Ericka Bellamy ("Ericka"), and plaintiff's subsequent attempt to recover survivor's benefits from defendant. On March 8, 2022, plaintiff applied for automobile insurance through defendant, listing her residence as a condominium located on Farmington Road in Livonia, Michigan. Defendant required Ericka to disclose all household members on the application, including children and family members. Ericka identified herself as the sole named insured, despite living with her daughter, plaintiff; her two sons; and plaintiff's son. Defendant issued Ericka an insurance policy covering a period from March 9, 2022 to September 9, 2022. Ericka subsequently added a vehicle that plaintiff owned to the policy, but did not disclose plaintiff as the owner of the vehicle or a resident in her household.

On May 30, 2022, Ericka was attempting to cross East 7 Mile Road in Detroit as a pedestrian when she was struck by two vehicles. She ultimately died as a result of her injuries. Plaintiff was then appointed as personal representative of Ericka's estate and applied for survivor's benefits from defendant. On

December 30, 2022, defendant sent plaintiff a letter notifying her that it was voiding the insurance policy issued to Ericka based on her failure to disclose plaintiff as the owner of a covered vehicle.

In January 2023, plaintiff filed this action to recover no-fault benefits from defendant, alleging breach of contract and requesting declaratory relief. In May 2023, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that it was entitled to equitably rescind the policy because Ericka materially misrepresented that she was the only household member at the address indicated on the application for insurance. The trial court held a hearing on defendant's motion in June 2024, and determined that defendant was entitled to rescind the policy on the basis of material misrepresentations. It therefore granted defendant's motion for summary disposition. This appeal ensued.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Chisholm v State Police*, 347 Mich App 646, 651-652; 16 NW3d 563 (2023). While defendant filed its motion pursuant to MCR 2.116(C)(8) and (10), in granting the motion, the trial court explicitly construed it as being brought under MCR 2.116(C)(10), and relied on documentary evidence in making its decision. Accordingly, we limit the analysis in the same manner as the trial court and only address whether there is a genuine issue of material fact under MCR 2.116(C)(10). See *Van Dyke Spinal Rehab Ctr, PLLC v USA Underwriters*, ___ Mich App ___, ___ n 3; ___ NW3d ___ (2024) (Docket No. 365848); slip op at 2 n 3 (limiting the summary disposition analysis where the trial court "only addressed the (C)(10) motion and [the] defendant d[id] not seem to explicitly argue why it was entitled to summary disposition under (C)(8)").

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Chisholm*, 347 Mich App at 652. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds might disagree." *Id*. On review, this Court "consider[s] the documentary evidence in the light most favorable to the nonmovant." *Id*.

"Finally, the application of an equitable doctrine such as rescission is also reviewed de novo." *Wilmore-Moody v Zakir*, 511 Mich 76, 83; 999 NW2d 1 (2023). "[B]ecause rescission is an equitable remedy, it should be granted only in the sound discretion of the court." *Id*. at 85 (quotation marks and citations omitted). "An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes," and "[a]n abuse of discretion necessarily occurs when the trial court makes an error of law." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because it (1) failed to balance the equities before determining whether rescission was an appropriate remedy, (2) failed to determine whether defendant returned the premiums paid to plaintiff, and (3) erroneously determined that there was no genuine issue of material fact regarding whether Ericka personally signed the application for insurance. We agree that the trial court was required to determine whether defendant returned the premiums paid before ratifying defendant's rescission of the policy.

However, we conclude that the trial court committed no error with respect to plaintiff's remaining arguments.

"[A]utomobile insurance contracts are governed by a combination of statutory provisions and the common law of contracts," and "[i]nsurance policies are contracts subject to the same contract construction principles that apply to any other species of contract." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018) (quotation marks and citations omitted). "[B]ecause insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). One such common-law defense is fraud, which "include[s] actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Id*. at 555. Actionable fraud requires,

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id*. (quotation marks and citations omitted).]

With regard to innocent misrepresentation, "the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false." *M&D, Inc v WB McConkey*, 231 Mich App 22, 28; 585 NW2d 33 (1998). "[A] fact or representation in an application is material where communication of it would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001) (quotation marks and citation omitted).

If fraud is established, a party may seek "grounds to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation . . . ." *Titan*, 491 Mich at 558. "Generally, [f]raud in the inducement to enter a contract renders the contract *voidable* at the option of the defrauded party . . . . For that reason, an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi*, 502 Mich at 408 (quotation marks and citations omitted; alteration in original).

Here, there is no genuine issue of material fact that Ericka at least committed innocent misrepresentation. Ericka represented on her application that she was the sole resident at the Farmington Road address, which was false, because she lived with her children and grandchild at the time. Further, defendant submitted an affidavit by James Sullivan, the manager of underwriting investigations, which stated that defendant relied upon Ericka's representation and extended insurance coverage based upon her "representation that she was the only person living at the Policy Address." Sullivan also provided that the insurance premium would have increased by $227.50 had defendant known about the additional household members, making the representation a material one. Under these circumstances, it was permissible for defendant to declare the policy void *ab initio* based on the fraudulent manner that it was acquired.

However, "[r]escission, notably, does not function by automatic operation of the law. Instead, because rescission is an equitable remedy, it should be granted only in the sound discretion of the court." *Wilmore-Moody*, 511 Mich at 85 (quotation marks and citations omitted). Plaintiff argues that the trial court erred by failing to balance the equities between herself and defendant before determining whether rescission was proper. However, plaintiff failed to preserve this argument by raising it in the trial court. See *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 39; 972 NW2d 282 (2021) ("Generally, for an issue to be preserved for appellate review, it must be raised in or decided by the trial court."). Notwithstanding, we address plaintiff's unpreserved argument because it involves a question of law and the facts necessary for its determination have been presented. See *Compagner v Burch*, 347 Mich App 190, 211; 14 NW3d 794 (2023) (noting the circumstances under which this Court has discretion to review an unpreserved issue in a civil case).

Plaintiff relies on *Van Dyke* and *Pioneer* for the contention that the trial court was required to balance the equities between herself and defendant. In *Bazzi*, the Michigan Supreme Court determined that between two innocent parties, "rescission does not function by automatic operation of the law," and "[j]ust as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Bazzi*, 502 Mich at 411. Therefore, "when two equally innocent parties are affected, the court is required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss." *Id.* at 410-411 (quotation marks and citation omitted; alteration in original). While *Bazzi* did not provide a clear-cut framework for balancing the equities between an insurer and innocent third party, this Court adopted five factors for trial courts to evaluate:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer*, 331 Mich App at 411.]

Plaintiff maintains that the trial court was required to evaluate the foregoing factors and that a remand is necessary for the court to address them. However, plaintiff's argument largely overlooks that "[s]urvivor benefits are strictly derivative." *DeSot v Auto Club Ins Ass'n*, 174 Mich App 251, 256; 435 NW2d 442 (1988).[1] Or in other words, "the right of the survivor to recover under the no-fault act is completely dependent upon the entitlement of the injured person had he lived." *Id.* See also *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 255; 293 NW2d 594 (1980) ("[A] survivor's entitlement to benefits may be said to be derivative of or dependent upon the deceased injured person's entitlement to benefits had he survived."). As discussed above, Ericka would not be entitled to benefits had she survived,

---

[1] "Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon us, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed." *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022).

therefore plaintiff is not eligible for survivor's benefits. Put differently, Ericka is not an innocent third party within the meaning contemplated by *Bazzi* and *Pioneer*.

Plaintiff, however, contends that she is an innocent party. *Van Dyke*, ___ Mich App at ___; slip op at 3, is instructive on this point because it involved a defendant insurer attempting to argue that a plaintiff medical provider was not entitled to a balancing of the equities because the plaintiff's claims were derivative of the insured's. This Court rejected the defendant's argument and held that the trial court was required to balance the equities. *Id*. at ___; slip op at 5. However, the Court premised its decision on the fact that the no-fault act explicitly allows a medical provider to bring a direct action against a defendant, which is not the case here, because plaintiff is a surviving dependent. *Id*. at ___; slip op at 3-4.

The *Van Dyke* Court also provided some insight as to what constitutes an "injured" innocent third party for the purposes of balancing the equities. *Id*. at ___; slip op at 8. It observed,

[D]efendant is reading too literally the innocent third party being "injured." Defendant would have the Court only look to who was physically injured in the accident itself. And, true enough, plaintiff was not physically injured. But plaintiff did suffer a financial injury: it provided medical services for which it may never be compensated. [*Id*. at ___; slip op at 8.]

Here, plaintiff does not qualify as an innocent third party because she did not suffer a physical or financial injury. Because plaintiff's claims are derivative of Ericka's, she is not entitled to no-fault benefits, and the trial court was not required to conduct the balancing test announced by *Bazzi* and *Pioneer*.

Plaintiff next contends that the trial court erred by determining that defendant's failure to return the premiums paid was not dispositive of its ability to rescind the policy. In response, defendant maintains that "[t]he failure of the parties to mutually rescind an insurance policy has no bearing on the equitable remedy of voiding a policy *ab initio*." We are unconvinced by defendant's attempt to distinguish between mutual and equitable rescission in this regard.

Defendant cites to *Meemic Ins Co v Fortson*, 506 Mich 287, 310 n 19; 954 NW2d 115 (2020), for the proposition that an insurer is not required to return the insurance premiums paid in an action for equitable rescission. While the *Meemic* Court explained the distinction between legal and equitable rescission, noting that legal rescission implicated additional formalities, such as "tender[ing] to the other party, as a precondition of suit, specific restitution of everything received under the contract," it did not indicate that a defendant insurer is free of its obligation to restore the parties to the status quo when pursuing rescission as a remedy. *Id*. (quotation marks and citations omitted). In fact, the authorities cited by the *Meemic* Court acknowledged that the parties must still be returned to the status quo in an action for equitable rescission. See, e.g., *Chaffee v Raymond*, 241 Mich 392, 394-395; 217 NW 22 (1928) ("In an action at law, based on rescission, a tender is a prerequisite. In equity, however, the rule is not so rigid, for there the bill must make profert of return of what has been received, and the decree will place the parties in status quo, as far as possible.") (citation omitted). Indeed, even where "a claim to rescind a transaction is equitable in nature," rescission must "restore[] the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi*, 502 Mich at 409.

Based on the foregoing principles, the trial court erred by ratifying defendant's rescission of the policy without first determining whether the premiums paid by Ericka were returned. Although defendant

-5-

represented at the hearing on its motion for summary disposition that it returned the premiums paid, it presented no documentary evidence to that effect. This case therefore should be remanded for the trial court to determine whether a refund check was returned, received, and negotiated by the parties.

Finally, plaintiff contends that summary disposition was improper because defendant failed to prove that Ericka personally typed her name into the signature line on her application for insurance, and consequently, failed to prove that it is entitled to rescission. This argument ignores plaintiff's own burden of proving a genuine issue of material fact on the issue. Under the burden-shifting framework of MCR 2.116(C)(10),

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists . . . . If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

Under this framework, defendant had the initial burden of supporting that it was entitled to rescission on the basis of fraud. The burden then shifted to plaintiff to establish the existence of a genuine issue of material fact with documentary evidence. However, plaintiff provided no evidence to call into question Ericka's signature on the application. Instead, she merely speculated that "[i]t is just as likely that an insurance agent completed and signed the Application . . . ." Under these circumstances, the trial court properly observed that there was "no admissible evidence" to support plaintiff's argument. The trial court, therefore, did not err by determining that there was no genuine issue of material fact regarding Ericka's application signature.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron

-6-